LAND, J.
Defendants were charged with and arrested for playing cards for money, in violation of an ordinance of the town council of Marksville of date January 6, 1909, and reading in part as follows, to wit:
“Be it resolved that after the first of February next, it shall be unlawful for any person or persons to gamble at cards, dice or any other game or device, in any hotel, saloon or any public place of business, or in any private residence, in the limits of the corporation.”
Defendants filed a plea admitting the fact that they were engaged in a game of cards for money on February 2, 1909, as charged, and were arrested therefor, but assailing the said ordinance as unconstitutional, ultra vires, and illegal, for the reason—
“that the Constitution has delegated to the Legislature alone the power of suppressing gambling and penalizing the same, and the said town council usurps the power of the Legislature when it attempts to do so.”
The plea was overruled, the defendants were tried and found guilty, and each of them sentenced to pay a fine of $10, and in ■default of the payment thereof to be incarcerated in jail for' the period of four days. The defendants have appealed.
Act No. 82, p. 69, of 1855, amending the act incorporating the town of Marksville, confers upon the mayor and board of aider-men “the power to remove all nuisances,” and “to prescribe fines for all breaches of the by-laws of said town.” The town, -also, by the terms of this act, is invested with “the powers that are prescribed by law for the government of corporations in general.”
The record does not disclose what kind of a card game the defendants were playing, or in what particular place the game was played. It is stated in brief of appellants that the game was “draw poker,” and the place a private room in a building occupied as a saloon. Counsel for the prosecution states that the game was played in a poolroom, which is a public place.
The defendants were convicted, as charged, “for playing cards for money within the corporate limits of the town of Marksville,” and on their admission of the facts as set forth in the charge. Hence there is nothing to show that the defendants were gambling in a public place.
All the authorities cited in behalf of the plaintiff refer to gambling houses, or to gambling in public places. It has been held in several cases that a municipality may pass an ordinance prohibiting gambling games denounced by the statutes of the state. City of Monroe v. Hardy, 46 La. Ann. 1263, 15 South. 696; New Orleans v. Collins, 52 La. Ann. 976, 27 South. 532.
The charter confers no powers on the town of Marksville to suppress gambling eo nomine. “The power to remove all nuisances” does not include the power to suppress acts merely vicious or immoral. There is no general state law which prohibits playing cards for money. Act No. 69, p. 108, of 1886, makes it unlawful to gamble with dice or cards on or in view of public highways or streets. In State v. Dobard, 45 La. Ann. 1412, 14 South. 253, it was held that under the general power “to suppress all nuisances” the council of the city of New Orleans *435 had the right to penalize the sale of lottery-tickets, already made unlawful hy the laws of the state. But in City of Shreveport v. Maloney, 107 La. 194, 31 South. 702, this court declared null and void and ultra vires an ordinance against betting on horse races through the medium of turf exchanges. At that time gambling on horse races had not been made unlawful by state legislation. The court adopted the view that under article 188 of the Constitution of 1898 the duty to suppress gambling was primarily confided to the Legislature.
Act No. 136, § 15, p. 231, of 1898, conferred on municipalities organized under or adopting the provisions of that statute the power to “prohibit games, gambling houses and rooms, and to provide for the punishment of persons engaged in the same.”
In Town of Ruston v. Perkins, 114 La. 851, 38 South. 583, it was held that Act No. 136, p. 224, of 1898, was constitutional. The town of Marksville has never adopted the provisions of this act, but has retained its old charter adopted at a time when no form of gambling was unlawful except banking games, such as faro. It may be taken for granted that the lawmakers of 1855 had no intention whatever to vest in the town of Marksville the power to suppress all forms of gambling for money, whether in public or in private.
Gambling per se was not an indictable offense at common law. The municipal police power over gaming and gambling houses is dependent upon the charter or general laws. 28 Cyc. 713, 714.
Our conclusion is that the ordinance is illegal and ultra vires in so far as it penalizes the playing of cards for money. It is not pretended that the defendants were keeping a gambling house or were gambling in public view.
It is therefore ordered that the sentences appealed from be annulled, avoided, and reversed, and that the defendants be discharged without day, and that the town of Marks-ville pay costs in both courts.