(74 South. 709)

No. 22402.

CITY OF BATON ROUGE v. WEIS et al.

(March 12, 1917.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS ⬤═══592(1)—POWER TO DEFINE CRIME—MUNICIPALITIES.

The charter power of the plaintiff city "to close gambling houses" does not include the power to penalize the betting of money on poker and other games which have never been denounced by the laws of the state.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1311.]

2. MUNICIPAL CORPORATIONS ⬤═══594(6)—POWER TO DEFINE CRIME — MUNICIPALITIES — STATUTES.

The power to penalize gambling games was specially conferred by statute on all municipalities created under Act No. 136 of 1898, known as the "General Municipal Incorporation Law."

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1328.]

3. MUNICIPAL CORPORATIONS ⬤═══594(6)—POWER TO DEFINE CRIME — MUNICIPALITIES — CHARTER AND STATUTE.

The plaintiff city is not in that category.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1328.]

O'Niell, J., dissenting.

Appeal from City of Baton Rouge; William A. Benton, Judge.

Isidore Weis and others were convicted in the city court in the City of Baton Rouge of the offense of gaming, and they appeal. Sentence set aside, motion to quash the charge sustained, and defendants discharged.

T. Jones Cross, of Baton Rouge, for appellants. L. D. Beale, City Atty., of Baton Rouge (S. G. Laycock, of Baton Rouge, of counsel), for appellee.

LAND, J. On January 23, 1917, the defendants were charged in the city court of the city of Baton Rouge as follows:

"That they and each of them did on the 22d day of January, 1917, in the city of Baton Rouge, La., at a gambling table, bet and wager money and representatives of money at the game of poker in a certain house on Convention street used and occupied for said purpose, against the ordinances of the city of Baton Rouge and in violation of the provisions of Ordinance No. 3 of the Commission Series for the year 1914."

Defendants moved to quash the charge against them on the ground that the said ordinance, quoad such charge, is unconstitutional and illegal, and is unauthorized by any law of the state or by the charter of the city of Baton Rouge.

On the trial of the motion evidence was adduced as follows:

"Isidore Weis, one of the accused, being duly sworn, testified on direct examination: That he was present at the house on Convention street in the city of Baton Rouge on the night of January 22, 1917; that seven or eight men were engaged therein playing an ordinary game of poker with cards and chips stacked before the players. It was just an ordinary game of poker, and nothing else."

"Witness Isidore Weis testified on cross-examination as follows: The house referred to was immediately back of Paulsen's drug store; this house can be entered and is entered at times through the alley in the rear of the Mayer Hotel, which alley extends to the street as a back entrance to the Mayer Hotel from Convention street; the game referred to as being played is stud poker; this house is used for no other purpose other than gambling; this house is rented by myself and Mr. Louis Arbour; that he is directly in charge of all games played at said house; we get a rake off from the games."

After argument the motion to quash was overruled, to which ruling counsel for defendants excepted.

The defendants thereupon entered pleas of not guilty, and after trial each of them was found guilty as charged, and sentenced to pay a fine of $50, or in default thereof to serve 20 days in the city jail.

Defendants have appealed to this court.

[1-3] The city of Baton Rouge is authorized by its charter—

"to close all gambling houses, and to expel from the city or imprison all bunco men, lottery deal-

ers, common cheats and swindlers." See Act 169 of 1898, p. 336.

The act confers no other powers on the council over the subject-matter of gambling.

It is to be noted that by section 15, subd. 26, of Act No. 136 of 1898, p. 224, for the creation and government of municipal corporations, each city, town or village is empowered to prohibit and suppress "games, and gambling houses and rooms."

It thus appears that the lawmaker, advisedly it is to be presumed, omitted to empower the city of Baton Rouge to prohibit or suppress gambling games.

The ordinance in question, enacted in the year 1914, bears the following title:

"Prohibiting gambling for money or anything of value in the city of Baton Rouge, and prohibiting the keeping of any place where gambling is carried on or allowed, and providing penalties therefor."

Section 1 of said ordinance penalizes bets or wagers for money or other things of value at any gambling table or bank, etc., or at any gambling game, or at poker, poker dice, etc., or other game that can be played with cards, dice, or dominoes, etc.

Section 2 of the ordinance penalizes the leasing or keeping of any building, room, or place for the purpose of being used as a place to bet or wager or gamble as set forth in section 1.

Defendants were charged with betting and wagering money at the game of poker in a certain house used and occupied for that purpose.

They were not charged with leasing or keeping said house, or having any interest therein. In short, the defendants are charged under section 1 of said ordinance with betting on a game of poker played by themselves.

In City v. Maloney & Schulsinger, 107 La. 194, 195, 31 South. 702, this court said:

"To the Legislature alone the power is delegated of legislating against gambling. The intention was, as we judge, to make provision for a general statute on the subject, and not to leave it to one municipality to adopt ordinances against gambling in all forms.

"Above all, a power having been specially delegated to the Legislature, it is not delegated to one of the subordinate branches of the state government."

In the Town of Ruston v. Perkins, 114 La. 851, 38 South. 583, this court held that the Legislature by Act No. 136 of 1898, p. 224, conferred on municipalities organized under that statute the power to prohibit and suppress gambling games such as "draw poker."

In Town of Marksville v. Worthy et al., 123 La. 432, 49 South. 11, 131 Am. St. Rep. 353, the defendants were convicted of playing cards for money within the corporate limits of the town of Marksville.

In that case this court reviewed the jurisprudence on the subject, and held, as stated in the syllabus, as follows:

"Playing cards for money has not been denounced as unlawful by the statutes of this state, except when such gambling is carried on in or in view of a public highway or street. A town charter which contains no delegation * * * to suppress gambling, but confers merely the right 'to remove nuisances,' does not warrant the enactment of an ordinance penalizing the playing of cards for money in any and all places within the corporate limits."

The court in its opinion said, inter alia:

"It has been held in several cases that a municipality may pass an ordinance prohibiting gambling games denounced by the statutes of the state. City of Monroe v. Hardy, 46 La. Ann. 1232, 15 South. 696; New Orleans v. Collins, 52 La. Ann. 976, 27 South. 532.

"The charter confers no powers on the town of Marksville to suppress gambling eo nomine.

"Gambling per se was not an indictable offense at common law. The municipal police power over gaming and gambling houses is dependent upon the charter or general laws. 28 Cyc. 713, 714."

Defendants are not charged with keeping a gambling house, but with betting on a game of poker in a house used for that purpose. The mere better is not criminally liable for the keeping of such a house by another person.

"All the statutes, of course, aim to reach the actual proprietor of the gaming device or establishment himself, whether he operates or man-

ages it in person, or does so by a servant, clerk, agent, or in any other manner." 12 R. C. L. § 42, p. 738.

We are of opinion that the city of Baton Rouge had no power to penalize the betting of money on games of poker.

It is therefore ordered that the sentence below be set aside; that the motion to quash be sustained; and that the defendants be discharged without day.

SOMMERVILLE, J., concurs.

See dissenting opinion of O'NIELL, J., 74 South. 710.