No. 433

First Circuit

SEAL v. KNIGHT

(April 13, 1929. Opinion and Decree.)

Bascom D. Talley, of Bogalusa, attorney for plaintiff, appellant.

C. Ellis Ott, of Bogalusa, attorney for defendant, appellee.

MOUTON, J. The defendant, Oscar Knight, was the nominee of the Democratic Party for member of the School Board for the Fifth Ward, Parish of Washington, at an election held November 6, 1928.

Plaintiff claims, as alleged in his peti-

tion, that at that election he was elected to said office as an independent candidate. He alleges that the commissioners of election by an unlawful count of the votes cast at that election, made their returns, giving defendant 97 votes as against his 89, thus illegally tabulating a majority of 8 votes in favor of defendant. He alleges in Article XIV of his petition that the ballots cast "were stamped on the elephant, indicating a vote for the entire Republican ticket, and that the voters also crossed over into the Democratic column and stamped across at the name of Oscar Knight and spoiled the said ballots"; that the said spoiled ballots to the number of 56 were unlawfully counted for defendant. The gravamen of plaintiff's complaint is grounded on the foregoing allegation under which he claims that these 56 votes, being illegal, should not be taken into account, thus reducing the legal votes in favor of defendant to 33 and giving plaintiff a majority of the votes cast, and entitling him to the office.

The defendant first interposed the plea of estoppel to the claim of plaintiff. This plea is based on the clause found in the primary election law of Acts 97 of 1922, and 215 of 1924, which was printed on the official ballot used at said election, pledging the voters who participated in the primary to abide by its results and to support its nominees in the ensuing general election.

It is admitted in a statement of fact that plaintiff voted in two primary elections at which Knight, defendant, was nominated on the Democratic ticket for the position in contest, and that he used the official ballot prepared for that election; and, that he subsequently consented to become an independent candidate at the election against defendant, the Democratic nominee.

In the case reported in 123 La. 435, 61 So. 518, Lacombe and Laborde had been rival candidates on the Democratic ticket for police juror, at a primary election. Lacombe was nominated and his name was placed on the official ballot. At the regular election, however, Laborde became a candidate in opposition to Lacombe and was returned elected. Lacombe contested his election, claiming that under section 27 of Act 49 of 1906, Laborde, the defeated candidate at the primary, was precluded from being a candidate against Lacombe who had been nominated in a primary election in which Laborde, the contestee, had taken part. The Court, on rehearing, held that the provision inhibiting the defeated candidate at the primary from becoming a candidate at the regular election did not affect the voters who could not be deprived of their right to elect the defeated primary candidate, at the ensuing regular election.

Counsel for defendant refers us on this point to the case of Payne vs. Gentry, 149 La. 707, 90 So. 104. In that case the question involved was in reference to the printing of the name of a candidate on the official ballot in violation of law, thus making him an official candidate.

In differentiating that case from the Lacombe vs. Laborde suit, above referred to, the Court said it was not a case as was the Laborde case, where the voters had, of their own motion, written the name of the defeated candidate on their tickets, which is the question involved here.

In the Lacombe case the voters were declared to have the right of electing at a regular election a rival candidate who had been defeated at the primary election notwithstanding the prohibition levelled against the candidate under the provisions of Act 49 of 1906.

In this case, for a like or a stronger reason, the electors could not be deprived of their constitutional right to vote for the election of plaintiff, the candidate of their choice, by voting for him as an independent candidate in opposition to defendant, though plaintiff had voted in the primary election in which defendant had been re-elected as the nominee of the Democratic Party.

The plea of estoppel was therefore properly overruled.

After urging the plea of estoppel, defendant filed an exception of no cause of action which was maintained, and the case was dismissed.

The official ballot which was used at the regular election is in the record.

On the Democratic ticket under the names of Alfred E. Smth andd Jos. T. Robinson, candidates for President and Vice-President, appear the names of the Presidential electors printed with a white square opposite their respective names; also, in like manner, the names of a candidate for Representative in Congress, for member of the State Board of Education and under that the name of Knight, defendant herein, for member of School Board, the contestee in these proceedings.

On the Republican ticket, under the elephant, political device of the Republican Party, we find the names of their candidates for President and Vice-President, and the names of the Presidential electors with the usual white square opposite thereto, but with no candidate for member of Congress or School Board.

In Article XIV of plaintiff's petition the alleged cause of illegality of the votes cast for defendant, is, as we have before noticed, because the voters had stamped the elephant, Republican Party emblem, and had crossed over to the Democratic ticket and had voted for defendant, the party nominee of the Democratic Party for member of the School Board. Plaintiff in that article sets out that there had been 56 votes thus cast, and which he contends were spoiled ballots.

In Article XIX of his complaint he alleges that 64 of these spoiled ballots had been unlawfully counted for defendant and in another article, that defendant had received only 33 legal votes. These 33 legal votes, counted with 64, which are contested, would foot up a total of 97 votes which plaintiff alleges had been returned by the election commissioners in favor of defendant, who declared him elected to the office in contest. Though plaintiff in one part of his petition complains of 56 votes having been illegally cast because the voters had crossed over to the Democratic ticket to vote for defendant, and in another part, alleged that 64 votes were spoiled ballots, we take it, that the gravamen of the attack on the result of the election is directed to the crossing over of the voters to the Democratic ticket and stamping the square opposite the name of defendant.

We understand . that plaintiff relies on the ground set out in Article XIV of his petition for the relief sought, otherwise there would be no affirmative facts alleged as a basis for the complaint, which must be averred in an election contest to show wherein the votes were illegally cast. McNeely vs. Speight, 7 La. App. 719.

In support of his contention that the votes he mentioned were illegal, plaintiff refers us to Article VIII, Constitution of 1921, page 75, which gives the right to the voter to vote the entire or straight ticket of a particular political party, by merely stamping 'the device of that party

at the head of its list of candidates as appears on the official ballot.

He also refers to that part of the article of the Constitution which says that when the voter does not desire to vote an entire or straight ticket, he may vote for candidates of any political party by stamping or marking the blank space opposite the name of each candidate on the official ballot.

He directs our attention also to Acts of the Legislature in which the foregoing provisions of the Constitution are embodied.

The Republican ticket, as we have before stated, had the names of its candidates for the Presidential electors, and of no other candidate for any other office. The voters, no doubt, had the right, at that election, to vote for these Presidential electors, either Democratic or Republican and also for the other candidates in the field or for an independent candidate if they so desired. It seems plain to us that these voters could have expressed their choice by stamping the white square opposite the names of these Republican Presidential electors and then could have gone over to the Democratic column and cast their votes for Representative in Congress, member of the State Board of Education or for member of the School Board by stamping or making the usual mark in the white square opposite the names on the Democratic ticket of these various local candidates.

If these voters had pursued that course we do not think contestant would have claimed that these votes had been unlawfully cast. Instead of so casting their votes these 56 or 64 voters, as alleged by plaintiff, stamped the elephant and then crossed over and expressed their choice for defendant, candidate for the School Board, by stamping the white square opposite his name.

The contention of the plaintiff is that when you stamp the emblem of a particular political party you vote the straight ticket, and, that the stamping of the emblem, means, under the provisions of our election laws, as expressed in counsel's brief: "You confine yourself to that party and its candidates."

The right of suffrage, as we understand the law, invests each voter with the privilege of voting for every candidate in the field at that election, Presidential electors and local candidates. No doubt that the 64 voters by voting for the Republican electors by stamping the elephant, the Republican device, confined their choice to the candidate of that party for Presidential electors, but to no other candidate as there were no others on that ticket. If there had been a candidate for member of the School Board on that ticket, obviously the voters would have been equally bound in favor of that candidate by stamping the Republican emblem.

In such a case the voter is bound all along the line, which the Constitution and statutes enacted thereunder, we think, have in view, where it is stated that the voter may vote an entire or straight ticket of a political party by merely stamping the device of that party at the head of its list of candidates as appears on the official ballot. When he has so voted he has exhausted his constitutional right of suffrage, as we understand the law, and cannot vote for any other candidate, either independent or regularly nominated.

The 64 voters in this case by stamping the elephant voted only for the Presi-

dential electors, had not therefore exercised their full right of suffrage, and had the right to vote also for the defendant, the candidate of the Democratic Party by stamping the white square opposite his name on the official ballot.

Counsel for plaintiff refers to several authorities which say that the voter must comply with the provisions of our election statutes which cannot be modified, enlarged or liberally construed. This is the general rule which has received practical application in many contested election cases. We do not find, however, in the instant case that the 64 voters in casting their vote for defendant in the manner alleged and as hereinabove stated, have impliedly or expressly violated any provision of our election laws or the constitutional provision relied upon by counsel for plaintiff.

In the case of Payne vs Gentry, above cited, where the name of a candidate had been placed on the official ballot in violation of law, the Court took occasion to remark that our form of government is democratic, and that the will of the majority or plurality must be respected. There is no suggestion in plaintiff's petition indicating that the 64 voters had not clearly and honestly expressed their choice in favor of defendant for member of the School Board by stamping the white square opposite his name on the Democratic ticket. Their votes with the other 33 which plaintiff admits in his allegations were lawfully cast for defendant, gave a free and unhampered expression of the will of the majority of the electors that participated in the election for the office in contest, and in favor of defendant. We find, that the will of the majority was, as far as disclosed by the record, lawfully expressed, and that plaintiff had no cause of action as decreed below.