20 So.2d 808

## CITY OF BOGALUSA v. SALLIS et al.

### No. 37706.

Dec. 11, 1944.

Rehearing Denied Jan. 15, 1945.

Osceola H. Carter, of Franklinton, for defendants-appellants.

Fred S. LeBlanc, Atty. Gen., Michael E. Culligan, Asst. Atty. Gen., and Jim W. Richardson, City Atty., of Bogalusa, for plaintiff-appellee.

ODOM, Justice.

The defendants were prosecuted in the City Court of Bogalusa, Louisiana, under affidavits, each of which charged that the defendant " * * * on or about the 3rd day of September, 1944, within the said City of Bogalusa, Washington Parish, Louisiana, did unlawfully, maliciously and willfully gamble at cards for money, or the representative thereof, in the Redwood Hotel within the limits of the City of Bogalusa, contrary to Ordinance No. 79 of the City of Bogalusa and contrary to the form of the Statutes of the State of Louisiana, made and provided, and against the peace and dignity of the same."

Each of the defendants filed a motion to quash the affidavit on the following grounds:

(1) "That Ordinance Number 79 of the City of Bogalusa adopted on the 2nd day of June, 1915, and under which this defendant is charged, is unconstitutional, ultra vires and illegal."

(2) "That Ordinance Number 79 of the City of Bogalusa, is broader than the Acts of the Legislature chartering said City, that said Charter, and the amendment thereto only authorized the closing of gambling houses."

(3) "Further that at the time of the adoption of said ordinance the Legislature alone had the power of suppressing gambling and penalizing the same and the Commission Council in drawing the ordinance attempted to usurp the power of the Legislature."

The motion to quash the affidavits was overruled, and the defendants were ordered to trial. Each of them was convicted. Each of them filed a motion for a new trial

on the grounds (1) that the verdict was contrary to the law and the evidence; (2) that the ordinance under which the charge was made is unconstitutional, ultra vires, and illegal, and (3) that the evidence showed that said card game was not a banking game, "but was merely a friendly game, without cut or take off, in a private room of a guest at the Hotel, he being a paid guest and occupying the room as a bed room, and no one [was] in said room, or taking part in the friendly game, except those invited by him."

The motion for a new trial was overruled, and each of the defendants was sentenced to pay a fine of $15 and costs and, in default of the payment of the fine and costs, was ordered to serve 30 days in the city jail. The defendants appealed. The issues in each of the cases are identical, and we shall dispose of them in one opinion.

The City of Bogalusa was chartered under Act 14 of 1914. Under Section 4 of that act, the Commission Council of the city was granted "the power and authority, in addition to the powers conferred upon them by law or elsewhere in this Charter, * * *. To preserve the peace and good order of the city."

Then follow 15 paragraphs specifically conferring upon the Commission Council the power and authority to adopt and enforce ordinances relating to such matters as the health of the city, drainage, the suppressing of nuisances, the prevention of the sale of adulterated and decayed food and adulterated drinks, the opening and keeping open and free from obstruction of all streets, public squares, wharves, etc.; the keeping of the streets clean and in repair, the adequate provision for the maintenance of an efficient police force and fire department, the lighting of the streets, the organizing and maintaining of free public schools, etc. None of these relates to the question of gambling, but Paragraph 17 of that section specifically confers upon the Commission Council the power and authority:

"To close all gambling houses and to expel from the city or to imprison all bunco men, lottery men, common cheats and swindlers, beggars and dangerous and suspicious characters."

Assuming that it had authority to do so under the city charter, the Commission Council on June 2, 1915, adopted Ordinance No. 79, the purpose of which, according to its preamble, was "To prohibit gambling at cards, dice or other contrivances for money or anything of value, or the representative thereof, in any saloon, grog shop, near beer saloon, confectionary or market, or in any rooms connected with any of the same, in any public or private club rooms or billiard hall, in any store or in any hotel, or on the streets, sidewalks, vacant lots, parks, or in any place where the public is invited or admitted, or in any room or place where people congregate for the purpose of gambling within the limits of the City of Bogalusa."

Section 1 of the ordinance provides:

"That whosoever shall gamble at cards, dice or other contrivances for money, or anything of value, or the representative

thereof, in any saloon or grog shop, near beer saloon, confectionary, market or in any rooms connected with the same, in any public or private club rooms, pool rooms or billiard hall, or in any store, hotel, or on the streets, * * * shall, upon conviction, be fined in the sum of not more than one hundred ($100.00) Dollars, or imprisoned not more than thirty (30) days, or both, in the discretion of the court."

Section 2 of the ordinance provides that all laws or parts of laws and ordinances of the City of Bogalusa, Louisiana, in conflict with this ordinance be repealed.

The cases were tried on an agreed statement of facts, which shows that:

"All five of the defendants were engaged in a game of cards, said game of cards being commonly known as 'stud poker' and for money stakes; that the game was being conducted in the Redwood Hotel in one of the guest rooms, occupied by the defendant, M. J. Stout, who had registered as a guest of the hotel in the regular order of business and that the other defendants, namely, W. R. Armour, Joe Newman, Elmer McNeese and Earl Sallis, were present in said room by invitation of the said M. J. Stout; it is further agreed that the game was not a banking game; that there was no cut or take out but that all of the players were hazarding money on and in the game; that M. J. Stout was a paid guest and was occupying this room as a bedroom; that the room occupied by M. J. Stout did not open directly into the lobby or into the restaurant; that the room did open into a hall along which other guests of the hotel occupying rooms

in that section of the hotel would have to pass; that the door leading to the room of M. J. Stout was locked."

The defendants were caught gambling at cards for money in a hotel room in the City of Bogalusa, and therefore violated the plain provision of Ordinance No. 79 of the Commission Council, which specifically prohibited such conduct; so that the only issue involved is whether Ordinance No. 79 is ultra vires and therefore invalid and void.

The identical question was presented and decided by this court in the case of City of Baton Rouge v. Weis et al., 141 La. 99, 74 So. 709, decided March 12, 1917.

The City of Baton Rouge was chartered by Act 169 of 1898, page 327. Section 20 of that act is very similar to Section 4 of Act 14 of 1914, under which the City of Bogalusa was chartered. Section 20 of that act specifically authorized the City Council of Baton Rouge "to preserve the peace and good order of the city," and confers the following powers relating to gambling:

"* * * to close all gambling houses, and to expel from the city or imprison all bunco men, lottery dealers, common cheats and swindlers, beggars, and dangerous and suspicious characters * * *."

It will be noted that the provision in this act relating to gambling is almost identical with that found in Section 4, Paragraph 17, of Act 14 of 1914, which is the charter of the City of Bogalusa. The only differences are that in the Baton Rouge charter the city was authorized to expel from the city or imprison all "lottery dealers," while in the Bogalusa charter the city was authorized to

expel from the city or to imprison all "lottery men," and in the charter of Baton Rouge the preposition "to" is omitted before the word "imprison."

The City Council of Baton Rouge adopted an ordinance prohibiting bets or wagers for money or other things of value at any gambling game or poker, poker dice, or other game that can be played with cards, dice, or dominoes, and made it a misdemeanor to violate its provisions. In the case of City of Baton Rouge v. Weis et al., supra, the defendants were prosecuted in the City Court of Baton Rouge on a charge alleging:

"That they and each of them did * * * in the city of Baton Rouge, La., at a gambling table, bet and wager money and representatives of money at the game of poker in a certain house * * * used and occupied for said purpose, against the ordinances of the city of Baton Rouge and in violation of the provisions of Ordinance No. 3 of the Commission Series for the year 1914."

In that case, as in the one at bar, the defendants moved to quash the charge against them "on the ground that said ordinance, quoad such charge, is unconstitutional and illegal, and is unauthorized by any law of the state or by the charter of the city of Baton Rouge." The motion to quash was overruled, and the defendants were convicted. They appealed to this court.

After quoting the provisions of the charter of Baton Rouge which authorized the city "to close all gambling houses, and to expel from the city or imprison all bunco men, lottery dealers, common cheats and swindlers," etc., we said:

"The act confers no other powers on the council over the subject-matter of gambling."

The same is true as to the power conferred upon the Commission Council of the City of Bogalusa by its charter. In the case just referred to, this court went on to say:

"It is to be noted that by section 15, subd. 26, of Act No. 136 of 1898, p. 224, for the creation and government of municipal corporations, each city, town or village is empowered to prohibit and suppress 'games, and gambling houses and rooms.' It thus appears that the lawmaker, advisedly it is to be presumed, omitted to empower the city of Baton Rouge to prohibit or suppress gambling games."

In that case we held that the Baton Rouge ordinance was ultra vires, null, and void, and our decree was as follows:

"It is therefore ordered that the sentence below be set aside; that the motion to quash be sustained; and that the defendants be discharged without day."

That case is decisive of the issues involved in the case at bar. Clearly the Legislature delegated to the Commission Council of the City of Bogalusa no power or authority to suppress or prohibit "gambling games." The only power delegated to the City of Bogalusa relating to gambling was the power "to close all gambling houses and to expel from the city or to imprison all bunco men, lottery men," etc.

The city attorney cites, and apparently relies to some extent at least on, the cases of

Town of Ruston v. Perkins, 114 La. 851, 38 So. 583, and Town of Marksville v. Worthy et al., 123 La. 432, 49 So. 11, 131 Am.St.Rep. 353. Instead of those cases supporting his contention, they are against it. In the Ruston case, the defendant was convicted under an ordinance which prohibited "gambling games" such as draw poker, in which game the defendant was admittedly engaged. This court upheld the conviction on the ground that Act 136 of 1898, under which the Town of Ruston was incorporated, specifically conferred upon the City Council authority to adopt ordinances to prohibit and suppress "gambling games."

In the Marksville case, the defendants were prosecuted "for playing cards for money within the corporate limits of the town of Marksville," and, according to statements made by counsel before this court, the game engaged in by the defendants was "draw poker." They were convicted under an ordinance which made it unlawful "for any person or persons to gamble at cards, dice or any other game or device, in any hotel, saloon," etc. The ordinance under which they were convicted was attacked on the ground that it was ultra vires and void because the Legislature had not delegated to the Town of Marksville authority to prohibit and suppress gambling games. That contention was upheld by this court, the court saying:

"The charter confers no powers on the town of Marksville to suppress gambling eo nomine. 'The power to remove all nuisances' does not include the power to suppress acts merely vicious or immoral.

There is no general state law which prohibits playing cards for money."

We said, inter alia:

"Our conclusion is that the ordinance is illegal and ultra vires in so far as it penalizes the playing of cards for money. It is not pretended that the defendants were keeping a gambling house or were gambling in public view."

Clearly the City of Bogalusa had no authority to adopt an ordinance to prohibit or suppress "gambling games."

It is therefore ordered that the conviction of these defendants and the sentences imposed upon them be set aside; that the motion to quash be sustained, and that the defendants be discharged.