LUTHER E. HALL, Judge pro tern.
Plaintiff seeks to annul a Sewerage Bond Election, held May 9, 1961, in the East Bank Consolidated Sewerage District of Jefferson Parish, and/or to nullify the promulgation thereof; or in the alternative to annul the promulgation of the returns relative to Proposition No. 4.
The election was conducted with printed ballots and ballot boxes. Four propositions were voted upon. On May 17, 1961, the Jefferson Parish Council, which called the election, promulgated the returns evidencing that Propositions Nos. 1, 2 and 3 had failed, but Proposition No. 4 had carried by a majority in number of 147 votes, and a majority in amount by $419,556.67.
This suit is concerned primarily with Proposition No. 4. After trial on the merits, the District Judge rendered judgment annulling the promulgation of the results of *222 the election relative to Proposition No. 4. The Jefferson Parish Council, one of the •defendants, prosecutes this appeal from that judgment.
In his suit, filed May 22, 1961, plaintiff attacked the election and promulgation on the ground that the statutes under which the election was held were unconstitutional. He also alleged that the election and promulgation had been conducted in a fraudulent manner, that gross irregularities existed in the conduct of the election and promulgation, that unauthorized and unqualified voters were permitted to vote in •certain designated wards and that “said invalid, illegal and void votes were in sufficient number to change the result of said •election in both popular vote and assessed valuation as allegedly tabulated by the Jefferson Parish Council on Proposition No. 4 and to cause the defeat of Proposition No. 4 in both popular and assessed valuation”.
To this petition defendants filed an exception of no cause or right of action, insofar as the suit sought to invalidate the election on the grounds of fraud and irregularities, for the reason that plaintiff’s petition did not set forth with sufficient particularity, and in sufficient detail, the fraud and irregularities complained of. Argument on this exception was heard by the Court, and on June 12, 1961 the Court maintained the exception but reserved to plaintiff the right to amend within fifteen days.
The following day plaintiff filed a motion for Discovery under the provisions of Article 1492 of the LSA-Code of Civil Procedure and called for the production of certain designated documents and other election paraphernalia. After hearing argument on the motion, the District Judge on June 14, 1961 signed an order directing that the ballots, ballot boxes and all other pertinent data pertaining to the election and promulgation thereof be produced and that plaintiff and his counsel be permitted to inspect them. The order contained appropriate safeguards insuring the protection of the material during plaintiff’s inspection.
From this order defendants took writs to this Court which writs were refused on the ground that this Court would not interfere with orderly proceedings in the trial court in the absence of a showing of irreparable injury and on the further ground that relators had a remedy by appeal in the event of an adverse judgment on the merits.
Pursuant to the trial court’s order plaintiff proceeded to, and did, examine the contents of 28 of the 68 boxes used in the election, obtaining orders from time to time extending the time within which to amend his petition.
With the information gained from this examination plaintiff was enabled on July 31, 1961 to amend his petition by alleging the names and assessments of the voters whose votes he challenged and by particularizing his allegations of fraud and irregularities. Defendants filed an exception of no cause or right of action to the amended petition which was overruled. During the trial, plaintiff was permitted to file numerous additional amendments of a similar character.
After trial on the merits, which lasted fifteen weeks during which time there were forty-five days of actual hearings, the District Judge rendered the judgment appealed from. In his written reasons for judgment the District Judge said in part:
“ * * * Plaintiff challenged hundreds of votes cast in the election. The Court has carefully considered the evidence presented and concludes that plaintiff has proven the following:
“1. That married women voted entire assessments where the property was in the name of both husband and wife on the tax rolls in an amount in excess of $300,000.00 (Total Assessment).
“2. That married women voted the entire assessment where said assessment was in the name of the hus *223 band alone in an amount in excess of $750,000.00 (Total Assessment) * * *
“ * * * The Court is satisfied that * * * the above ballots were counted and the total assessed valuation was promulgated by the Jefferson Parish Council in reaching their result that Proposition No. 4 had carried by $419,-556.67 in assessed valuation. * * *
“ * * * The Court is of the opinion that married women, whether the property assessed be in the name of the husband and wife or in the name of the husband alone, are without capacity to vote the entire assessment. Defendants called hundreds of women as witnesses. Many of them testified that their husbands had authorized them to vote the full assessment. Strangely enough, some of the husbands (approximately one hundred) could not have voted themselves because they were not registered to vote. Many witnesses testified that they voted the entire assessment simply because their husbands did not vote in this election but freely admitted that they had not discussed the matter with their husbands. The Court is of the opinion that the most favorable construction permitted by law is that married women may vote only one-half of the assessment of community property, and if the Court reduces the assessed valuation by one-half of those married women ballots offered in evidence by plaintiff, Proposition No. 4 failed to carry as to assessed valuation * *
“ * * * the Court is of the opinion that plaintiff has successfully attacked a sufficient number of ballots to overcome the majority of assessed valuation cast in favor of Proposition No. 4. Having determined that Proposition No. 4 did not carry in assessed valuation the Court need not pass upon the other issues presented in this suit.”
Appellant contends that the trial court erred in two respects as follows:
1) In permitting plaintiff to examine the ballots used in the election under the General Discovery Procedure provided for in Article 1492 of the Louisiana Code of Civil Procedure, and
2) In holding that married women cannot vote the full assessment.
1
It is quite clear that plaintiff’s entire case depends upon the validity of the trial court’s order of June 14, 1961 permitting plaintiff to inspect the contents of the ballot boxes under Discovery, for, without such Discovery, he could not have obtained the specific information necessary to enable him to amend his petition nor could he have produced any evidence in support of his allegations. All of the evidence produced by plaintiff in this case was obtained by means of this order. After unsuccessfully opposing the order, appellant objected to the introduction of all evidence obtained as a result thereof. If the order was not legally valid all of the evidence upon which the District Judge based his decision was inadmissible.
The District Judge issued his order under the authority of the provisions of LSA-C.C.P. Article 1492 which reads in part as follows:
“Upon motion of any party showing good cause therefor * * * the court in which an action is pending or in which the judgment was originally rendered may:
“1. Order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the *224 matters within the scope of the examination permitted by Article 1436 and which are in his possession, custody or control * *
Appellant concedes that the article is all embracing and does not provide any exception for ballots or other election documents and paraphernalia. However, appellant contends that insofar as election ballots are concerned this article is in conflict with the provisions of the statute (LSA-R.S. 39:501 et seq.) under which the election was held, particularly LSA-R.S. 39:517 which reads as follows:
“The custodian of the archives or records of the authority ordering the election shall preserve for a term of three months from the date of the promulgation of the election, the ballots and other returns.”
Appellant argues that since the Article 1492 is a part of the general law on Discovery and LSA-R.S. 39:517 is a special law on the subject matter of ballots, the special law must prevail and the ballots must remain in custody, intact; citing Hewitt v. Webster, La.App., 118 So.2d 688. We see no conflict between the two statutes. Apparently this argument was suggested to appellant by the decision of this Court in State ex rel. Roussel et al. v. St. John the Baptist Parish School Board et al., La.App., 135 So.2d 665, wherein it was held that the Public Records Act (LSA-R.S. 44:1 etc.) which gives any elector of the state or any person who has paid any tax collected by or under authority of the State the right to examine, copy etc. any public records, was in conflict with the provisions of LSA-R.S. 39:517 quoted supra, and that the latter act being a special statute must prevail.
The Roussel case has nothing to do with the subject of Discovery. In that case no election contest was before the Court, and the very basis of the decision was that the ballots and other returns used in an election must be preserved intact in order to make them available for inspection in the event of a contest, and that any possession or handling of the ballots under the Public Records Act would destroy the integrity of the ballots, rendering the ballots worthless as evidence.
It does not follow that Article 1492 of the Code of Civil Procedure is also in conflict with LSA-R.S. 39:517. The discovery procedure was set in motion in this case in order to obtain evidence for use in an election contest. As this Court said in the Roussel case: “The only conceivable purpose for preserving the ballots and other returns is to make such documents available for inspection in the event of a contest * * *
It may be said parenthetically that the discovery in this case was conducted under Court supervision and it is not contended that the integrity of the ballot boxes, ballots and other election paraphernalia was in any way jeopardized.
Appellant further argues that the Article 1492 was not available to plaintiff because plaintiff's motion for discovery was filed after the Court had maintained the exception of no cause or right of action, and as a result of the Court’s ruling no action was “pending” within the meaning of the article. We cannot agree that the action was not “pending”, since it had not been dismissed but was merely being held in abeyance pending timely amendment of the petition.
Appellant further contends that there is a universal prima facie presumption of the correctness and regularity of the official promulgation, citing Landry v. Ozenne, 194 La. 853, 195 So. 14, and that the trial court completely cast this presumption aside when he permitted plaintiff to come into court under general allegations of fraud and obtain an order permitting him to examine the ballots and other election paraphernalia.
At the time the Legislature adopted our Discovery statutes the jurisprudence of this State was quite settled to the effect that the Courts would not inquire into the officially promulgated returns in an election *225 contest unless the plaintiff’s petition contained specific and detailed allegations of the fraud and irregularities complained of.[1] The Legislature is presumed to have been aware of this jurisprudence when it adopted the statutes (See City of New Orleans v. Board of Supervisors, 216 La. 116, 43 So.2d 237) and yet the original Discovery Statute (formerly R.S. 13:3741-3794) as well as the Discovery Articles of the Code of Civil Procedure (LSA-C.C.P. Arts. 1421-1515) were adopted without any exception being made therein for the use of discovery in election contests.
Since the Article 1492 is all inclusive and does not negative the right of discovery in election contests appellant’s argument does not address itself to the legal validity of the Court’s discovery order but addresses itself rather to the propriety of the exercise of the Court’s discretion in issuing it.
We are unable to find in this particular case any abuse of the Court’s discretion in permitting discovery or in permitting the various amendments to plaintiff’s petition, and his good judgment was sustained by the result. The proof obtained by discovery completely overcame the presumption of the regularity of the official promulgation.
2
Appellant concedes (as found by the trial court) that, in the twenty-eight boxes examined during the trial, a sufficient aggregate assessment was voted (and counted in the official promulgation) in favor of Proposition No. 4 by married women who voted the entire assessment in cases
(a) Where the community property was assessed in the names of both husband and wife, and
(b) Where the community property was assessed in the name of the husband alone,
to change the officially promulgated result of the election, if as held by the trial court, married women could legally have voted, at best, not more than one-half of such aggregate assessment.
Under the conceded facts it is unnecessary for us to consider whether the wife can legally vote as much as one-half of the community assessment in either of such cases. Neither is it necessary for us to consider whether the husband as head and master of the community should not vote the entire assessment of community property. The very narrow question posed for consideration is whether the wife can under any circumstances legally vote the whole assessment or any part thereof in excess of one-half.
Appellant takes the position that she may do so if authorised by her husband and contends that this authorization was given by the husbands in sufficient instances to effect a reversal of the judgment appealed from.
The theory advanced by appellant is that the wife can represent and bind the community in any case authorized by the husband. But the issue here is the wife’s right to vote and not the wife’s right to bind the community.
Apparently underlying the appellant’s theory is the idea that it is the community which votes, either through the husband as head and master thereof or through the wife, duly authorized thereto. But legal entities cannot vote — only people, and in a tax payers election each person may cast but one vote and may vote property only in proportion to his interest therein.[2] Proxy *226 voting is prohibited by Article VIII Section 3 of the Constitution, LSA as well as by LSA-R.S. 39:508.
Assuming, but not deciding, that the wife, may vote her half interest in the community property, any vote in excess of her half interest is bound to be a “proxy vote”.
Any “authorization” given by the husband to his wife to vote his one-half interest therein is in our opinion as much a “proxy” as if he had authorized her to vote his separate property.
It does not necessarily follow from what we have said that when the husband votes the entire community property he is in effect voting one-half thereof by proxy from his wife; and we emphasize that our holding is limited to the proposition that a vote by a duly authorized married woman of more than one-half of the value of the community property is a proxy vote at least as to the excess and is prohibited by law.
3
The answer and supplemental answer filed by defendants in the court below contained alternative allegations to the effect that should the Court find any particular category of votes challenged by plaintiff (such as married women voting the full assessment etc.) to be invalid, that if all votes in that category both “For11 and “Against” were eliminated in all 68 precincts involved in the election, the election would still carry by a majority in number and amount. Defendants prayed that all such ballots in all of the precincts should be eliminated.
This alternative plea was couched in general terms, contained no specific allegations and was a mere conclusion of the pleader who obviously could have no knowledge of what the ballot boxes would reveal.
Under color of this plea defendants sought to introduce and file in evidence in globo the remainder of the 68 ballot boxes which had not theretofore been examined in Court and to have the Court itself, unaided by counsel, segregate and eliminate from the promulgation all ballots found by the Court to fall in any category challenged by plaintiff which the Court might consider to be invalid. Plaintiff objected to the offer and the Court very properly sustained the objection.
However the Court offered to permit defendants by means of discovery, or under subpeonas duces tecum, to open and examine the contents of all ballot boxes and with the information obtained from such examination to amend their plea by incorporating specific allegations therein and to introduce any detailed evidence they desired in proof thereof. This defendants refused to do.
Thereupon the Court offered to permit a general recount of all the ballots cast in the election if either party would request it. Plaintiff refused to request a recount on the ground that there were so many proven irregularities in the conduct of the election, in the handling of the boxes after the polls closed, and so many irregularities in the conduct of the promulgation that the vote would not be a true expression of the will of the electorate. Defendants likewise refused to request a recount.
Appellant now prays, in the event this Court should find that married women are not entitled to vote the full community assessment, that this matter be remanded with instructions to the trial court to examine all 68 ballot boxes and eliminate one-half of the assessment shown on all votes in that category.
What the ballot boxes would reveal is a matter of pure conjecture, but assuming arguendo that the remaining boxes do contain ballots whereon married women voted the entire assessment of community property against Proposition No. 4 it was the function of counsel to search out and produce specific evidence thereof to the Court. It is not the function of the Court to handle a litigant’s case or to find and produce evidence in support of his contentions. Al *227 beit this is an election contest it is none the less a law suit.
To remand the case for the purpose requested would present the trial court with the practically impossible task not only of segregating and counting the ballots but with determining as to each ballot the marital status of the voter and whether the property voted was community property — all of this without the aid of counsel for appellant, since counsel has already declined to present the evidence himself.
Furthermore the record reveals that there were many other irregularities in the conduct of the election in addition to the community property vote by married women. The District Judge based his decision on only one of the irregularities since it, by itself, was decisive of the case. If the case were remanded for the purpose requested and if, on remand, appellant’s contentions should prevail, the result would be to ignore completely and to foreclose the other irregularities which exist but which neither the District Court nor we have found it necessary to consider; or else the result would be to compel the District Judge to reopen the case and to pass upon all the other irregularities revealed by the record. With further appeals and possibly requests for further remands the matter would stretch out interminably.
Had defendants taken advantage of the discovery offered them by the trial court they could have produced and introduced in evidence whatever the boxes might have contained in their favor. They refused to do this on the asserted ground that under the law the Jefferson Parish Council was estopped to attack its own promulgation. (See Reynolds & Henry Construction Co. v. Police Jury of Ouachita Parish, 44 La.Ann. 863, 11 So. 236.)
The short answer is that by taking advantage of the Court’s offer defendants would not have been attacking the promulgated result but on the contrary would have been engaged in an effort to uphold it by attempting to off-set the proof adduced by plaintiff. See Blanchard et al. v. Iberville Parish School Board, 218 La. 784, 51 So.2d 70.
Having concluded that the District Judge was correct in holding that Proposition No. 4 did not carry in assessed valuation we need not pass upon the other issues presented in this suit.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.

. See Hinyub v. Sloat, La.App., 29 So. 2d 507; Smith v. Washington Parish Democratic Committee, 239 La. 827, 120 So.2d 257; Seal v. knight, 10 La.App. 563, 121 So. 632.

. See Peck v. Board of Directors of Public Schools, 137 La. 334, 68 So. 629; Law v. Village of Marthaville, La.App., 195 So. 83; McFatter v. Beauregard Parish School Board, 211 La. 443, 30 So. 2d 197; In re Board of Commissioners of St. Charles Parish Hospital Service District, 232 La. 889, 95 So.2d 488; Op. Atty.Gen. 1944-46, p. 216; 1938-40, p. 306.