74 So.2d 182 (1954)
225 La. 972
DOUGLAS PUBLIC SERVICE CORP. et al.
v.
GASPARD et al.
In re DOUGLAS PUBLIC SERVICE CORP.
No. 41828.
Supreme Court of Louisiana.
July 2, 1954.
*183 Baldwin, Haspel & Molony, Lawrence A. Molony, Conrad Meyer, III, Lawrence J. Molony, New Orleans, McDonald & Buchler, Melairie, Harold A. Buchler, New Orleans, for relator.
Dymond & Cassibry, Fred J. Cassibry, New Orleans, for defendants.
FOURNET, Chief Justice.
The Douglas Public Service Corporation instituted proceedings seeking injunctive relief against twenty-one named defendants[1] individually, and as officers, agents, and members of the Oil Workers International Union, Local No. 447, affiliated with the CIO, to prevent them from (1) trespassing on its private property, (2) interfering with persons lawfully entitled to enter or leave its premises, (3) pursuing any course, concerted or otherwise, involving the intimidation, molesting, threatening, or abuse of petitioner's officers, agents, employees, customers, or employees of customers, or (4) damaging or injuring any properties belonging to petitioner, and, upon the dissolution *184 of the temporary restraining order previously obtained and the dismissal of its suit on exceptions of no cause and no right of action, applied for and was granted writs to the end that we might review the ruling of the trial judge. Pending our determination of the matter, we granted an order staying all proceedings.
The allegations of the petition, the well-pleaded facts of which must be considered as true for the purpose of disposing of these exceptions, are that the petitioner, who owns and operates a bulk liquid storage terminal fronting on the Mississippi River in Jefferson Parish, as delineated on an attached map, has had the Oil Workers International Union as the representative of its employees for collective bargaining purposes, but because petitioner refused to accede to arbitrary, exorbitant and unreasonable demands of the union, its officers and members went on strike on February 23, 1954, despite every reasonable effort on petitioner's part to avert such action by bargaining in good faith; and during the course of the strike the named defendants and others acting in concert with them engaged in the following specific unlawful and illegal activities: (1) Continuously from February 23, 1954, until the filing of the petition, they have trespassed upon the private property of petitioner; (2) certain specified defendants have on two occasions threatened with bodily harm two of petitioner's managing employeesits superintendent and assistant superintendent, the former after his automobile was stopped as he attempted to leave the plant, and the latter if he continued to work for petitioner and keep its plant in operation; (3) other specified defendants have on three occasions threatened with bodily harm employees of petitioner's customersone as he attempted to enter the plant and the other two as they were engaged in work on tug boats of customers tied up at petitioner's dock and wharf located on its private property on the batture. The dates, times, and incidents are given in full, including the names of all parties involved. In addition, other acts of violence that have been committed on petitioner's premises by persons unknown are imputed to defendants. These acts, also detailed in the petition, consist of (1) interference with the operation of petitioner's pumps by persons trespassing on its private property for the purpose of stealing (a) a valve stem from one pump, and (b) large fuses from a fuse block cabinet, which removals had the effect of stopping the motors furnishing power to the pumps, and (2) retaliation against and/or intimidation of customers who continued to do business with petitioner by the puncturing of the rear tires on a customer operated automobile.[2] It is alleged, further, that the damages already sustained by petitioner are irreparable, and unless such future activities are enjoined the petitioner will be forced to discontinue its business and will suffer further irreparable damages that cannot be estimated in a monetary amount.
In response to the rule the defendants, on the return date, filed exceptions of no right of action, to the jurisdiction of the court rationae materiae, exceptions of no cause and no right of action and of prematurity, and, answering on the merits, denied generally each and every allegation of the petitioner.
A perusal of the petition shows the exception of no right of action, predicated on the contention that petitioner seeks to bring into court an unincorporate association by the citation of only a portion of its members, is without merit, for the union as such is not named as a party to the suit and has made no appearance of record. The suit was instituted against twenty-one *185 named individuals, and it is prayed that these individuals be cited as officers, agents, and members of the union and that they and other agents, officers, and members of the union and all persons acting in concert with them be enjoined.
The exception to the court's jurisdiction rationae materiae, based on the premise that this is a matter or dispute involving unfair labor practices in a business that is affected with interstate commerce, a field over which the National Labor Relations Board has exclusive jurisdiction under the Labor Management Relations Act, 61 Stat. 136 et seq., 29 U.S.C.A. §§ 141-197, is equally without merit under the facts of this case.
There is no question, of course, that Congressional legislation curtails state action in the field of interstate commerce intended to be covered, and that state action is, within that particular sphere, superseded. The overwhelming weight of judicial authority holds that the rights conferred by the Labor Management Relations Act of 1947 (referred to colloquially as the Taft-Hartley Act) are subject to exclusive enforcement through the administrative scheme as supplemented by judicial remedies prescribed in that statute. However, Congress, by the adoption of this act, has left a wide field still open to state regulation and control, and where the matter is one that is not granted exclusively to the National Labor Relations Board, the courts formerly possessing jurisdiction have retained it. In other words, state cession of jurisdiction takes place only where state and federal laws have parallel provisions. Allen-Bradley Local, U.E.R.M.W. v. Wisconsin Employment Relations Board, 315 U. S. 740, 62 S.Ct. 820, 86 L.Ed. 1154; International Union, U.A.W. A.F. of L. Local 232 v. Wisconsin Employment Relations Board, 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651; Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board, 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691; Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; International Brotherhood v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995; Garner v. Teamsters, C. & H. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. ___. See, also, the excellent annotations at 32 A.L.R.2d 1026, 93 L.Ed. 470, and the discussion of this subject in Newman's very recent book entitled "The Law of Labor Relations," beginning at page 76, and particularly pages 98-102.
As stated in the Allen-Bradley case [315 U.S. 740, 62 S.Ct. 826] "Congress designedly left open an area for state control," and the intention "`of Congress to exclude the states from exerting their police power must be clearly manifested.'" While the precise area in which the jurisdiction of the state courts to enjoin picketing is, or is not, affected by the federal acts is in considerable doubt, "the only one which seems to be free of any substantial doubt is presented where a state court undertakes to enjoin picketing by illegal means, such as picketing accompanied by violence or threats, or mass picketing." 32 A.L.R.2d 1029. (Emphasis supplied.)
The Supreme Court of the United States is, of course, the final arbiter as to whether and to what extent the Labor Management Relations Act of 1947 has affected the traditional jurisdiction of the state courts to enjoin picketing for an unlawful purpose and by illegal means. In the second Wisconsin case above cited, that court said [336 U.S. 245, 69 S.Ct. 521]: "While the Federal Board is empowered to forbid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegaleven of the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states." (Emphasis supplied.)
In the very recent decision in the Garner case [346 U.S. 485, 74 S.Ct. 164], which is relied on by the defendants, the Supreme Court of the United States, while reversing state action enjoining picketing, was careful to point out that it was not "a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes." The opinion *186 further points out: "We have held that the state still may exercise `its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.'"
By way of exceptions of no cause and no right of action and of prematurity, however, the defendants, contend Louisiana, in conjunction with a number of her sister states, has adopted the "Little Norris-LaGuardia Act", Act 203 of 1934, as now incorporated in the 1950 revisions under 23:841-23:849, which is patterned after the federal act of the same name, prohibiting the "issuance of sweeping injunctive relief by district courts in labor disputes," the argument being, in effect, that we should follow the federal jurisprudence covering cases involving labor disputes under the federal act and thus prevent "government by injunction in labor disputes;" in any event, that we should not disturb the trial judge's conclusion that the plaintiff's petition is insufficient to constitute an allegation of violence and/or threats so excessive as to render resort to the courts necessary for the preservation of peace and order.
LSA-R.S. 23:844 provides, briefly but substantially, that no court shall issue a temporary or permanent injunction in any case involving or growing out of a labor dispute unless and until the court has found as a fact, after hearing testimony in open court with full opportunity for cross-examination of witnesses, that those sought to be restrained have committed or threatened to commit unlawful acts that will cause the complainant substantial and irreparable injury to property; that these acts will continue unless restrained; and that complainant is without adequate remedy or ordinary legal procedure and has been unable to secure adequate official protection; provided at least 48 hours notice is given if the relief sought is a temporary restraining order, and provided further the relief sought is not specifically placed beyond the reach of any court action by the provisions of LSA-R.S. 23:841.
In a recent well-considered opinion, the Court of Appeals for the Parish of Orleans pointed out that Congress, under the authority specifically granted it by the Constitution of the United States to create and regulate the jurisdiction and powers of all inferior federal courts, was well within its right to effectively prohibit these courts from issuing injunctions in labor disputes by the enactment of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., while the power and jurisdiction of the courts of this state flows from constitutional grants[3] and the legislature is powerless to interfere with their prerogatives except as specifically authorized by the constitution, concluding that "The powers granted to the trial judge by the Constitution must take precedence over any provisions of any sort of legislation which runs counter thereto, whether such legislation pertains to capital, labor, or any other subject." The decision in that caseTwiggs v. Journeymen Barbers, etc., La.App., 58 So.2d 298, 302 received the approval of this court when we refused the writs sought for its review with the comment that "The judgment is correct."
Defense counsel recognize the validity of this distinction, for in brief they state the Twiggs decision "stands for the proposition that no act of the legislature, without constitutional amendment, may deprive the courts absolutely of their inherent right to issue needful writs," but while subscribing thus to the holding they argue it is not pertinent or controlling here since that case was "not concerned with the basic policy laid down in the act interpreted therein but only with defining the constitutional protection of the state court's inherent rights to issue needful writs." (Emphasis supplied.)
The right of a laborer to his hire and to organize for the promotion of better *187 wages and working conditions is, in our opinion, as absolute and essential to the pursuit of happiness as is his right to freedom of speech, religion, and to life and liberty itself,all recognized under our basic law as being among those inalienable rights with which all men are endowed by their Creator. And in order to insure that these rights will be maintained inviolate and fully protected, the courts were created with the unqualified guarantee that "No person shall be deprived of * * * property, except by due process of law", Section 2 of Article I, and that "All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay." Section 6 of Article I.
For the courts to function in an orderly manner, and with equal protection to all, the Constitution not having provided otherwise, it became necessary for the legislature to establish the rules and regulations that would govern the procedure to be followed by those seeking this guaranteed protection, including the issuance of all needful writs and processes. Such procedural statutes will be upheld in our courts so long as they do not violate our basic law. However, any act of the legislature, whether procedural or substantive, that infringes or trenches upon the constitutional prerogatives of the courts, cannot stand.
With these fundamental principles so well known, and universally recognized under our republican form of government as absolutely essential for the maintenance of our way of life, it is difficult for us to understand how our learned brother below could find complainant's petition failed to allege an injury done it in its private and property rights and, by the dismissal of its suit, to, in effect, close the doors of his court to it in its effort to have these rights protected.
The petition clearly states that the twenty-one named defendants are trespassing upon the private property of the petitioner and are committing numerous acts of violence, coercion, and intimidation with respect to its property rights and with respect to the rights of its employees and those of the employees of its customers, which acts continued even up until the day of the trial of the case, when a supplemental petition was sought to be filed showing additional acts of violence that had just that day occurred, including the cutting of the petitioner's lines of communication. While, as we have just pointed out, we fully recognize that the laborer in his effort to secure better working conditions and wages is well within his right to organize, to bargain, and to take any and all needful steps to lawfully accomplish this end, including picketing, by the same constitutional guarantees that make these rights secure for the laborer, the employer is also insured he will not be deprived of his property except by due process of law and that the courts shall be open to him for the protection of his rights.
If the plaintiff can prove the allegations of its petition (which are admitted by defendants to be true for the purpose of disposing of these exceptions) its property rights are clearly being violated by the trespasses being committed upon its property, by the destruction of its property rights, and by the violence, coercion, and intimidation of its employees through threats of physical and bodily harm and by the interference with their peaceful entrance and exit from its plant, as well as by the illegal and unlawful interference with the employees of its customers and those choosing to continue doing business with it. Unquestionably, therefore, under its constitutional right to due process of law and to justice administered without denial, impartiality, and unreasonable delay, it is entitled to the relief sought.
If follows that the provisions of the so-called anti-injunction act that seek to limit the jurisdiction of the district courts of this state in the granting of immediate *188 relief, if that is necessary for the protection of rights and property, are illegal and ineffective.
While it is true that it is within the sound discretion of the trial judge to issue a temporary restraining order in any given case of this type, we think under the alleged facts of this case he exercised his discretion wisely in granting the temporary restraining order to prevent irreparable damage, but, having granted this order, it then became his duty to hear the trial of the case on the merits in accordance with law and without unreasonable delay.
Counsel's argument that defendants have not been guilty of trespassing upon petitioner's private property since the levees are public is a matter that addresses itself to the merits of the case, as there is no allegation in the petition asserting the activities of trespass complained of are confined to the levee.
For the reasons assigned, the writs are made absolute, the judgment of the lower court maintaining defendants' exceptions of no cause and no right of action and dismissing plaintiff's suit is reversed, the exceptions are overruled, and the case is remanded to the lower court for trial on the merits on the rule for the preliminary injunction, pending which the temporary restraining order heretofore issued by the trial judge on April 9, 1954, is to remain in full force and effect. Costs of this appeal are to be borne by the defendant-appellees; all other costs are to await the final disposition of the case.
HAMITER, Justice (concurring).
In view of the charges contained in the petition of specific acts of violence on the part of defendants causing substantial and irreparable injury to plaintiff's property, which allegations must be deemed true and correct for the purpose of the present consideration, I agree that the district court was vested with jurisdiction ratione materiae and that the petition states a right and a cause of action, warranting a hearing on the rule for a preliminary writ of injunction.
However, I perceive of no good reason for questioning herein the validity of the provisions of the "Little Norris-LaGuardia Act", LSA-R.S. 23:841-23:849, as is done in the majority opinion. Even under those provisions plaintiff is entitled to the desired preliminary and permanent injunctions if and when it succeeds in proving, on a regular hearing of the merits of the cause, the mentioned charges of unlawful acts by defendants with resultant substantial and irreparable injury to its property.
I respectfully concur in the decree.
HAWTHORNE, Justice (dissenting).
I dissented from the refusal to grant writs in the cases of Twiggs v. Journeymen Barbers, La.App., 58 So.2d 298, No. 40,896 on our docket, and South La. Chapter, Inc., National Electric Contractors Ass'n v. Muller, our docket No. 41,380, wherein injunctions were granted against labor unions when there had been no compliance with the statutory procedure set out in Act 203 of 1934, R.S. 23:841 et seq., commonly known as the "Little Norris-LaGuardia Act". Further study has convinced me that those injunctions were wrongfully issued and that this court erred in refusing writs in those cases.
I am of the opinion that the district judge was correct in this case in maintaining the exceptions of prematurity and no cause or right of action because the relator had made no effort to comply with the procedural requirements set out for obtaining injunctive relief in a labor dispute. The majority opinion holds that the relator was relieved from complying with the provisions of the statute because they are unconstitutional. I cannot agree with this conclusion.
The ground for holding the procedural requirements unconstitutional, and the one urged by relatorthat they violate our basic law and infringe upon the constitutional prerogatives of the courtsis not *189 sound in my opinion. In its holding the majority has completely ignored the public policy as set out by the Legislature in R.S. 23:843 and has substituted its own policy in the matter of issuance of injunctions in labor disputes. That section provides:
"* * * the public policy of this State is declared as follows:
"Legal procedure that permits a complaining party to obtain sweeping injunctive relief that is not preceded by or conditioned upon notice to and hearing of the responding party or parties, or that issues after hearing based upon written affidavits alone and not wholly or in part upon examination, confrontation and cross-examination of witnesses in open court, is peculiarly subject to abuse in labor litigation for the reasons that:
"(1) The status quo cannot be maintained but is necessarily altered by the injunction;
"(2) Determination of issues of veracity and of probability of fact from affidavits of the opposing parties that are contradictory, and, under the circumstances, untrustworthy rather than from oral examination in open court is subject to grave error;
"(3) Error in issuing the injunctive relief is usually irreparable to the opposing party; and
"(4) Delay incident to the normal course of appellate practice frequently makes ultimate correction of error in law or in fact unavailing in the particular case."
This statement of policy shows that there was no intention on the part of the Legislature to deprive the courts of their authority to grant injunctions to protect employers from the unlawful acts of laborers, but that it intended merely to set up procedures and safeguards to protect laborers from the errors and abuses attendant upon the granting of sweeping injunctive relief to an employer.
Our statute does not prohibit the courts from issuing a temporary restraining order or a temporary or permanent injunction. It merely allows notice of at least 48 hours before the issuance of a restraining order and gives the laborers a right to be heard before the issuance of an injunction. These measures are reasonable to carry out the policy to prevent abuse of the injunctive process in labor disputes.
I think that the policy as announced in the statute is sound, and do not consider that the statute deprives the courts of their power to issue injunctions when it sets up reasonable safeguards to protect laborers from the issuance of injunctions through error and the consequent damage to their rights.
I am at a loss to understand the basis of the holding of the majority that the constitutional right of the relator to due process entitled it to immediate relief, in view of the concession of the majority that the Congress of the United States "was well within its right to effectively prohibit these [Federal] courts from issuing injunctions in labor disputes by the enactment of the Norris-LaGuardia Act". Our statute is patterned after the Federal statute and contains almost identical procedural requirements. If the right of due process requires that an employer have immediate injunctive relief in labor disputes, the Congress could not have required these delays for the issuance of injunctions because the Fifth Amendment of the Constitution effectively prohibits the Congress also from enacting legislation denying due process. The Federal statute under the reasoning of the majority, as I appreciate it, would likewise be unconstitutional as denying due process. The answer, of course, is that the Federal statute and our state statute are based on sound policy, and the procedural requirements of those statutes are reasonable ones to effectuate that policy, and there is, therefore, no denial of due process.
The Legislature has from time immemorial regulated writs which the courts may issue, such as writs of arrest, attachment, sequestration, and provisional seizure. There is no question that these writs are equally in aid of the courts' jurisdiction, yet the right of the Legislature to regulate *190 their issuance has never been seriously contested. The Legislature has even gone so far as to forbid in several instances the issuance of injunctive relief by the courts. R.S. 48:1993; R.S. 47:1575; R.S. 30:218; R.S. 23:1635; R.S. 30:13; R.S. 17:2188; R.S. 39:834; R.S. 26:106; R.S. 26:304. For example, the courts are forbidden to restrain the collection of taxes and to enjoin the payment of unemployment compensation benefits awarded by the Board of Review. The majority opinion casts serious doubt on the validity of all of these statutes.
I respectfully dissent.
NOTES
[1] L. Jambon, E. Rodriguez, A. Gauthreaux, E. Pairque, C. Inbody, C. Gaspard, S. Chaisson, C. Romero, A. Ford, J. Zophi, P. Turpiano, S. Badeaux, E. Griffin, M. Gaspard, L. Tassin, M. Sauerwin, C. Caston, J. Causin, W. Gauthreaux, R. Perez, and M. Kern.
[2] On the day set for the trial of the rule nisi for the preliminary injunction, the trial judge refused to permit the petitioner to file a supplemental and amended petition alleging additional acts of violence, coercion, and intimidation that had occurred just this morningincluding mass picketing, the physical blocking of the entrances to petitioner's plant, and the cutting of its telephone communicasystemdespite the fact the temporary restraining order was then in full force and effect, on the ground that the matter had been submitted on exceptions and he felt petitioner had ample legal remedy.
[3] Under the constitution of 1921 the district courts are vested with original jurisdiction in all civil matters, Section 35 of Article VII, and may "issue writs of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders and process" in aid of their jurisdiction. Section 2 of Article VII.