**166 So. 68**
**Succession of DYER.**

**No. 33723.**

Feb. 3, 1936.

Bert B. Bodenheimer, of Shreveport, for appellant.

Cook, Cook & Egan, of Shreveport, for appellee.

HIGGINS, Justice.

Plaintiff, as widow of the deceased claimed, under the provisions of Act No. 160 of 1920, the undivided one-half of the community of acquêts and gains belonging to him, alleging that there were no descendants or ascendants, and that he had died intestate. The defendant minor, through her tutor ad hoc, answered, averring that she is the duly adopted daughter of the

deceased and, as such, entitled to his undivided one-half interest in the community of acquêts and gains which existed between the deceased and his wife.

Counsel for plaintiff contended that the notarial act of adoption was without any legal effect, because there was no judicial approval of the adoption of defendant by the deceased, as required by the express provisions of Act No. 46 of 1932.

The tutor ad hoc of the minor argued that the provisions of Act No. 46 of 1932, requiring judicial approval of the adoption by the juvenile court, in cases where the minor is under the age of 17 years, is unconstitutional, and therefore the notarial act alone is sufficient to complete the adoption.

There was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.

The case was tried on an agreed statement of facts, substantially as follows:

The defendant, Grace Farmer, daughter of William Andrew Farmer and his wife, Elizabeth Farmer, was born on April 6, 1923. The former died on June 18, 1924, and the latter on February 19, 1925, at Frierson, De Soto parish, La. Immediately thereafter, the deceased, Fred L. Dyer, and his wife, Mrs. Julia White Dyer, took into their home the minor child, Grace Farmer, and until the date of Fred L. Dyer's death, he and his wife kept the little girl and treated her as their own child. Mrs. Dyer, since the death of her husband, has continued with the care and custody of the child, having her educated and treated in every respect as her own little girl.

During the year of 1925, the deceased, in behalf of himself and his wife, had his attorney prepare a notarial form of adoption by them of the minor, Grace Farmer. He took the document home, but failed or neglected to execute it until September 2, 1933, when he lay fatally ill in a sanitarium in the city of Shreveport. On that day he asked for the adoption papers prepared in 1925, and he and his wife duly executed the act of adoption before a notary public, and immediately had it recorded in the conveyance records of Caddo parish. Two days after the execution of the notarial act, Mr. Dyer died. No further proceedings were taken to complete the adoption of the child by deceased and his wife, in accordance with the requirements of Act No. 46 of the Legislature of 1932.

Fred L. Dyer, the deceased, was married to Julia White Dyer on May 29, 1918, and they established the matrimonial domicile in the parish of Caddo, state of Louisiana, where they resided together until his death on September 4, 1933. He died intestate and left no descendants or ascendants. His estate consisted of community property, and his succession was opened in the First judicial district court of Caddo parish on September 8, 1933.

Section 35 of article 7 of the Constitution of Louisiana of 1921 confers upon the district courts of the state, with-

out legislative enactment, general civil jurisdiction. This section reads as follows:

"The District Courts, except in the parish of Orleans, shall have original jurisdiction in all civil matters regardless of the amount in · dispute; * * * and in all cases where the title to real estate, or the right to office, or other public position, or civil or political rights are involved, and in all cases where no specific amount is in contest, except as may be otherwise provided in this Constitution."

Section 52 of article 7 of the Constitution of Louisiana of 1921 provides for juvenile courts for the state, designating them as courts of limited and special jurisdiction. This section reads as follows:

"There shall be a Juvenile Court in every parish of the State. In the parishes, other than Orleans, the judge of the District Court shall be ex-officio judge of the Juvenile Court in the parish or parishes located within his district, and in those districts in which there may be more than one judge, each judge shall have full jurisdiction.

"The sessions of said court shall be held apart from all sessions of the District Court, and its records shall be kept separately. The court may sit in chambers, and may hold its sessions irrespective of terms of court.

"The Legislature may create the office of judge of the Juvenile Court for parishes containing municipalities having twenty-five thousand or more inhabitants who shall have all the powers now con-

ferred on judges of the district courts as judges of the juvenile courts; and shall fix his qualifications, salary and tenure of office.

"The said courts shall have jurisdiction except for capital crime and assault with intent to commit rape, of the trial of all children under seventeen years of age who may be charged in said courts as neglected or delinquent children, and of all persons charged with contributing to such neglect or delinquency, or with a violation of any law now in existence or hereafter enacted for the protection of the physical, moral or mental well-being of children, not punishable by death or hard labor, and also in all cases of desertion or non-support of children by either parent."

Under the above constitutional grant of · authority, the Legislature adopted Act No. 30 of 1924, creating a juvenile court for the parish of Caddo; the city of Shreveport being located therein and having a population of more than 25,000 inhabitants. Section 6 of this act, following the constitutional provisions of article 7 of section 52 of the Constitution of 1921, reads as follows:

"The Juvenile Court for the Parish of Caddo shall have jurisdiction, except for capital crimes and assault with intent to commit rape, of the trial of all children under seventeen years of age who may be charged in said court as neglected or delinquent children, and of all persons charged with contributing to such neglect or delinquency, or with the violation of any law now in existence or hereinafter

enacted for the protection of the physical, moral or mental well being of children, not punishable by death or hard labor, and also in all cases of desertion or non-support of children by either parent."

In the case of State, in Interest of Bolin, v. Bruce, 178 La. 1081, 152 So. 911, 912, in interpreting the above constitutional and statutory provisions, we stated:

"In the case of In re Owen, 170 La. 255, 127 So. 619, 622, this court said:

" 'The line of demarcation between the courts exercising general civil jurisdiction with respect to the care, custody, and control of minors and the juvenile courts is well defined. These courts, in dealing with the welfare and interest of minors under a given age, are entirely independent of each other. Where the contest is between the parents, or between a parent and a third person, as to who should have the control and care of the minor, the court exercising general civil jurisdiction is the proper and exclusive tribunal to decide the issue. But, where a child is neglected or delinquent, and where the parent contributes to, or is responsible for, such neglect or delinquency, then the state has the paramount right in the interest of the welfare of the child to say who shall have the care, custody, and control of the child; and the juvenile court has been made the special and exclusive tribunal for determining such issue.' "

In the case of In re State, in Interest of Embrey (Gorges et ux. v. Embrey), 181 La. 1025, 160 So. 799, we held (syllabus):

"Juvenile court held without jurisdiction of proceeding for adoption of infant by his stepfather, where there was no showing that infant was either delinquent or neglected or that physical, moral, or mental well-being of such infant was threatened (Act No. 30 of 1924, and § 6 thereof; Const. 1921, art. 7, § 52)."

A reading of section 52 of article 7 of the Constitution clearly shows that the juvenile courts have special and limited jurisdiction. It is obvious that jurisdiction over adoption proceedings of minors was not expressly conferred upon the juvenile courts by the Constitution. Certainly, this power cannot reasonably and logically be implied from the provisions of the Constitution granting jurisdiction to the juvenile courts.

In the case of Western Union Tel. Co. v. Railroad Commission of Louisiana, 120 La. 758, 45 So. 598, we said:

"The rule that, 'as exceptions strengthen the force of a general law, so enumeration weakens as to things not enumerated,' applies to the provisions of a Constitution, as well as to those of a statute."

No attempt was made by the Legislature, in enacting Act No. 30 of 1924, to confer jurisdiction of adoption proceedings upon the juvenile court of Caddo parish, because that statute practically tracks the constitutional provision on the subject. But the Legislature, in passing Act No. 46 of 1932, did attempt to confer upon the juvenile court jurisdiction in adoption cases. The relevant portions of sections 2 and 11 read, as follows:

"The person, or persons, desiring to adopt anyone as above set forth, shall attach the act of adoption, prepared as above set forth, to a petition, addressed to the court having jurisdiction over either the person to be adopted or the adoptive parent or parents, which shall set forth."

"That in all cases where the person to be adopted is 17 years of age, or over, the District Court shall have jurisdiction under this act *and where said person to be adopted is less than 17 years of age, the Juvenile Court shall have jurisdiction.* That in all cases herein provided for the District Court having jurisdiction over either the person to be adopted or the adoptive parent or parents shall have jurisdiction for all purposes." (Italics ours.)

Act No. 46 of 1932 was amended by Act No. 44 of 1934, but this amendment has no application to this case, because the deceased died in 1933.

There is no constitutional inhibitions against the Legislature requiring judicial approval in adoption proceedings. Succession of Pizzati, 141 La. 645, 673, 75 So. 498; In re Brands' Estate, 153 La. 195, 95 So. 603. But the Legislature cannot take away from the district courts any of the jurisdiction conferred upon them by the Constitution and place such matters under the jurisdiction of juvenile courts, when the Constitution does not expressly or impliedly authorize the Legislature to do so.

We are of the opinion that the provision of Act No. 46 of 1932, conferring jurisdiction upon the juvenile courts in adoption matters, is clearly unconstitutional, being in contravention of article 7, sections 35 and 52 of the Constitution of Louisiana of 1921.

Does the fact that this provision in the statute is unconstitutional strike the whole act with nullity? We think not. Section 15 of Act No. 46 of 1932, reads as follows:

"If any clause, sentence, paragraph, or part of this Act shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder of this act, but shall be confined in its operation to the clause, sentence, paragraph, or any part thereof, directly involved in the controversy in which such judgment has been rendered."

It is plain that the other provisions in the act can stand, even though the unconstitutional part is stricken out.

What effect does the elimination of the provision granting jurisdiction to the juvenile courts have upon the act? One of two results inevitably follows: (1) The district courts would also have jurisdiction in cases of minors under the age of 17 years; (2) the notarial act of adoption standing alone would be sufficient.

We have already pointed out that the Legislature has authority to regulate adoption matters either by requiring or withdrawing judicial approval. Therefore, in order for the district courts to have jurisdiction of adoption proceedings of minors under the age of 17 years, it is necessary that some provision in the stat-

ute confer that right upon the district court. The only wording which we find in the statute that might be considered as having conferred concurrent jurisdiction upon the juvenile courts and the district courts is the last sentence of section 11 of Act No. 46 of 1932, above quoted. In interpreting that language, it must be borne in mind that in parishes where there is not a municipality of 25,000 inhabitants, the district judges shall be ex officio judges of the juvenile courts and have jurisdiction of both civil matters and juvenile cases. In other words, in most all of the parishes of the state, the district judge has jurisdiction of both classes of cases; the law requiring him to hold separate sessions and keep separate records with reference to juvenile cases. The last sentence of section 11 of Act No. 46 of 1932, in our opinion refers to district courts which also function as juvenile courts, because those judges have jurisdiction of cases where the minor is over 17, as civil judges, and jurisdiction of cases of minors under 17, as juvenile judges. We are fortified in this view by virtue of the fact that in the same section the Legislature expressly attempted to confer jurisdiction upon juvenile courts in cases where the minor was under 17 years of age. Furthermore, if it were the intention of the Legislature to confer concurrent jurisdiction, language conveying that meaning would have been used. We conclude that the district courts do not automatically have jurisdiction of adoption proceedings of minors under 17 years, when the unconstitutional grant of jurisdiction to the juvenile court is stricken out.

Now, we shall take up the final issue as to the effect of the notarial act. Act No. 31 of 1872, the adoption law of this state, was amended and re-enacted by Act No. 48 of 1924, and, under both the original and amendatory statutes, only the notarial act was required for legal adoption of minors. Hardy v. Mobley, 183 La. 668, 164 So. 621. Act No. 13 of 1928 simply changed Act No. 48 of 1924, as to require that the notarial act of adoption be recorded in the office of the registrar of conveyances. Act No. 46 of 1932 changed the law so as to require judicial approval in addition to adoption by notarial act. In other words, from 1872 to 1932, a notarial act of adoption, properly executed, signed, and recorded, was all that the law required for legal adoption of minors. Act No. 46 of 1932, in addition to requiring a notarial act of adoption and its recordation in the office of the registrar of conveyances, also requires judicial approval, as we have above pointed out. The Legislature failed in its attempt to confer jurisdiction upon the juvenile courts to grant judicial approval in adoption matters, as we have already shown. Therefore, and particularly in view of the provision of section 15 above quoted, the notarial act, properly executed, signed, and recorded, is sufficient for the legal adoption of minors under the age of 17 years of age.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment

of the district court is annulled and set aside, and Grace Farmer, defendant herein, is hereby declared to be the legally adopted child of the deceased, Fred L. Dyer, and, as such, an heir of his estate; all costs of the appeal to be borne by the plaintiff.

O'NIELL, C. J., and FOURNET, J., take no part.