58 So.2d 298 (1952)
TWIGGS et al.
v.
JOURNEYMEN BARBERS, HAIRDRESSER, COSMETOLOGISTS AND PROPRIETORS INTERNATIONAL UNION OF AMERICA, LOCAL 496 A.F.L.
No. 19893.
Court of Appeal of Louisiana, Orleans.
April 14, 1952.
Writ of Certiorari Denied July 3, 1952.
*299 Dodd, Hirsch & Barker, New Orleans, for defendant and appellant.
Graham & Graham, New Orleans (Richard Dowling, New Orleans, of counsel), for plaintiffs and appellees.
McBRIDE, Judge.
This is a suit by three owners and operators of barber shops in the City of New Orleans to restrain the defendant labor union and its agents from interfering with, coercing, intimidating, or from doing any other acts tending to destroy, affect, or interfere with their property or business, and from picketing the shops of plaintiffs. After a hearing on the rule nisi, the court below issued a preliminary injunction as prayed for, and the defendant has prosecuted this devolutive appeal as authorized by LSA-R.S. 13:4070.
The plaintiffs, Twiggs, Crane, and Danna, each own and operate a barber shop; each employs a barber or barbers, and each himself works in the shop with tools of the trade as a journeyman barber.
The defendant, an affiliate of the American Federation of Labor, is an unincorporated labor organization; the Barbers and Beauty Culturists Union of America, Local 61, an affiliate of the Congress of Industrial Organizations, is also an unincorporated labor union. The shop employees of the plaintiffs were members of the defendant local, but plaintiffs held no union membership. In May 1951 the business agent of defendant visited each plaintiff and endeavored to persuade each to become a member of the A. F. of L. local, that union's constitution providing that a proprietor, shop owner, or employer, who works at the trade, desiring to operate a union shop, must join the A. F. of L. union. Plaintiffs refused to join. Subsequently, the employees of plaintiffs signed up with the C. I. O. local. Union shop cards of the C. I. O. then were displayed in plaintiffs' shops in place of the A. F. of L. union cards, which had previously been on display. The evidence shows that a contract exists between the Master Barbers Association, of which plaintiffs are members, and the C. I. O., stipulating that owner-operators of barber shops, such as plaintiffs, need not themselves be members of *300 the C. I. O. local, and the fact that they are not members would not prevent their shops from being classified as union shops, provided their employees are members of the C. I. O.
The defendant union, after learning what had transpired, sent a committee to each plaintiff, with the end in view of ascertaining the facts, and of straightening out the matter, but without result. In July 1951, defendant union authorized picketing of plaintiffs' shops, and on September 1 picketing actually commenced. At each of the three shops there was placed one picket, on the sidewalk, bearing a sign reading:
"This barbershop unfair to Local 496 AFL Journeymen Barbers, Hairdresser, Cosmetologists and Proprietors International Union of America."
The present suit ensued.
According to the testimony of the business agent of defendant, the picketing resulted because the employees quit the A. F. of L. local and joined the C. I. O., and also because of the presence of the C. I. O. union cards in the barber shops in question, the purpose of the picketing being to persuade the employees to rejoin the A. F. of L. local. The business agent, however, admitted that the refusal of the three plaintiffs to join the A. F. of L. local started the trouble, which fact alone, he said, "didn't bring no picket line out there."
The petition alleges that if the picketing is to continue, each plaintiff will suffer an irreparable injury. The evidence adduced upon the trial of the rule nisi shows that since the commencement of the picketing the receipts taken in by each plaintiff from the operation of his business have materially decreased, and it is only reasonable to assume that the activities of the defendant union are responsible for the falling off in the volume of business done.
The lower court was of the opinion that substantial and irreparable injury to complainants' property would follow, unless the preliminary injunction should be issued, and that greater injury will be inflicted upon plaintiffs by the denial thereof than will be sustained by defendant by the granting thereof. We are quite in agreement with this conclusion.
The trial judge, in his reasons for judgment, had this to say:
"That, for me to allow one bona fide labor union local to picket members of another bona fide labor union local, would be to create a dangerous and chaotic condition in this community. The C. I. O. Local would have the same right to picket members of the A. F. of L. as the A. F. of L. Local would have to picket members of the C. I. O."
Narrowed down, whatever dispute there is seems to be between the two rival and competing unions, and plaintiffs are the unfortunate victims of the conflicting contentions of the organizations.
In view of the circumstance that we are here dealing only with a preliminary writ of injunction, which was undoubtedly issued by the court below as a conservatory step to spare irreparable damage and harm to plaintiffs' businesses pending a trial of the case on the merits, it is not necessary for us to decide here whether there exists a labor dispute as defined by LSA-R.S. 23:821, § 12, Act No. 203 of 1934.
By way of exceptions to the jurisdiction of the court ratione materiae, and of no cause or right of action, the defendant raises the defense that the lower court was without jurisdiction or authority to issue the writ, and that plaintiffs were without right to apply to the court for injunctive relief. We think these exceptions were correctly overruled below.
As a foundation for the exceptions, defendant relies on § 3 and § 6 of Act No. 203 of 1934, LSA-R.S. 23:841 and 844, sometimes called the "Little Norris-La-Guardia Act," which inhibits a court, in a labor dispute, from issuing any restraining order, or temporary or permanent injunction, which in specific or general terms prohibits any person or persons from doing, whether singly or in concert, any of the following acts:
"* * * (5) Giving publicity to and obtaining or communicating information regarding the existence of, or *301 the facts involved in, any dispute, whether by advertising, speaking, patrolling any public street or any place where persons may lawfully be, without intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof; * * *."
Counsel argue that as this case involves purely and simply a labor dispute, LSA-R.S. 23:841 and 844 are complete bars to the court's right to grant relief to the plaintiffs in injunctive form. But, as we said before, it is not necessary to determine now whether this appeal presents a labor dispute, for we have before us only a preliminary injunction, which was issued after the trial judge found that the plaintiffs had made out a prima facie case.
We are fully cognizant of the fact that the prototype of Act No. 203 of 1934 is the Norris-LaGuardia Act, of March 23, 1932, c. 90, 47 Stat. 70, 29 U.S.C. § 101 et seq., 29 U.S.C.A. § 101 et seq., and that the local statute contains provisions almost identical with those to be found in the federal act.
We also are cognizant of the fact that in many decisions of the federal courts it was held that the Norris-LaGuardia Act effectively inhibited federal courts from issuing injunctive relief against the doing of certain enumerated acts in labor disputes. There is no question that Congress has the right to regulate, change, or for that matter to completely abolish, jurisdiction and powers invested in federal courts inferior to the Supreme Court, as the inferior federal courts have only such jurisdiction and power as is conferred upon them by the Congress. This may be destroyed partially or in toto. U.S.Const. art. III, § 1 and § 2.
However, in the State of Louisiana the jurisdiction of our judicial tribunals flows from constitutional grants, and not from any act or action of the Legislature. See Succession of Dyer, 184 La. 251, 166 So. 68.
The general jurisdiction of the Civil District Court for the Parish of Orleans is conferred by Art. 7, § 35 and § 81, of the Constitution of 1921. But, in addition to the powers conferred upon the court in those sections, judges of the Civil District Court for the Parish of Orleans, by virtue of the power emanating from Art. 7, § 2, of the Constitution, "* * * may also in aid of their respective jurisdictions * * * issue writs of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders and process, * * *."
The writ of preliminary injunction undoubtedly is in aid of the court's jurisdiction. The written reasons for judgment express the judge's opinion that if the picketing were to continue, the plaintiffs will suffer irreparable injury, and this being so, the judge had the right to issue the preliminary injunction to preserve the status quo of plaintiffs' businesses, which were being seriously jeopardized, if not actually destroyed, by the complained of acts of defendant union in placing pickets in front of the three establishments. We believe it was his duty, under the circumstances, to issue the writ until such time as the case could ultimately be heard on its merits and all factual and legal questions resolved.
As was said in Cameron v. International Alliance of T. S. E. and M. P. O., 118 N. J.Eq. 11, 176 A. 692, 698, 97 A.L.R. 594:
"* * * `There is no more sacred right of citizenship than the right to pursue unmolested a lawful employment in a lawful manner. It is nothing more nor less than the sacred right of labor.' * * * The right of a workman to the `free use of his hands' has been described as one `of which the Legislature cannot deprive him, one which the law of no trades union can take from him, and one which it is the bounden duty of the courts to protect.' * * * `A man may not barter away his life or his freedom, or his substantial rights.'"
While LSA-R.S. 23:841 and 844 provide that picketing, unaccompanied by intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof, *302 is not to be enjoined, either by restraining order or temporary or permanent injunction, by any courts of this state, such legislation cannot deprive a judge of a district court of this state from issuing a preliminary injunction in aid of his jurisdiction, whether in a labor dispute or in any other action, as authorized by Art. 7, § 2, of the 1921 Constitution. The powers granted to the trial judge by the Constitution must take precedence over any provisions of any sort of legislation which runs counter thereto, whether such legislation pertains to capital, labor, or any other subject.
In State v. Burris, 169 La. 520, 125 So. 580, the Supreme Court was concerned with an analogous situation. There, the Court was confronted with an article of the Code of Criminal Procedure providing that no ruling of a court made on the trial of any plea of insanity shall, before sentence, be reviewable by any other court, either under appellate or supervisory powers. Such provision of the code conflicted with the provisions of the Constitution granting supervisory jurisdiction to the Supreme Court. It was held that supervisory jurisdiction being vested by the Constitution, that document must be looked to to ascertain the right to exercise it.
In State v. Doucet, 199 La. 276, 5 So.2d 894, 896, decided in 1942, it was said:
"It is clear that this Court has plenary power under Sections 2 and 10 of Article VII of the Constitution of 1921, granting it supervisory jurisdiction over all inferior courts and that these constitutional provisions must prevail over any provisions in a legislative act that conflict therewith. It is, therefore, apparent that this Court had the constitutional power and authority to issue the writs and, therefore, they were not improvidently granted."
See also Meyer v. Board of Trustees of Firemen's Pension & Relief Fund for City of N. O., 199 La. 633, 6 So.2d 713.
Appellant cites two Louisiana cases, both decided by the Court of Appeal for the Second Circuit, namely, Dehan v. Hotel & Restaurant Employees & Beverage Dispensers Local Union No. 183, 159 So. 637, and Johnson v. Milk Drivers & Dairy Employees Union, Local No. 854, 195 So. 791, in which the court held that in view of the 1934 act a state court is without jurisdiction to issue an injunction restraining a labor union from peacefully picketing the plaintiffs' places of business. But evidently in neither of the cases was Art. 7, § 2, of the 1921 Constitution called to the attention of the court. Regardless of the holdings in the cited cases, our opinion is that the 1934 act could not supercede, override, or diminish to any extent the broad powers of a district judge to issue any writ which he deems necessary in aid of his jurisdiction.
Much latitude must be given to the trial judge in determining whether a preliminary injunction should be issued, and his judgment will not be disturbed unless it clearly appears that he has abused the discretion vested in him. After all, a preliminary injunction is only designed to preserve and protect rights or property pending a trial of the issues of the case on the merits. Drew v. Town of Zwolle, 185 La. 867, 171 So. 59; Foscue v. Mitchell, 185 La. 963, 171 So. 91; Palama v. Livaudais, 179 La. 201, 153 So. 691.
For the reasons assigned, the judgment granting the preliminary injunction is affirmed, and the matter is now remanded to the court below for further proceedings according to law. Appellant is to pay the costs of this appeal; all other costs are to await a final determination of the case.
Affirmed.