95 So.2d 488

In re the BOARD OF COMMISSIONERS OF ST. CHARLES PARISH HOSPITAL SERVICE DISTRICT, PARISH OF ST. CHARLES, State of Louisiana, et al.

No. 43334.

April 1, 1957.

Rehearing Denied May 6, 1957.

Maurice B. Gatlin, Frank V. Zaccaria, New Orleans, for appellants.

James P. Vial, Hahnville, Eugene J. Morel, New Orleans, Thomas J. Kelly, Jr., Melvin P. Barre, New Orleans, Bryan J. Lehmann, Jr., Norco, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiffs—taxpayers, property owners, and qualified electors of St. Charles Parish[1]—are appealing from a judgment dismissing on exceptions of no cause and no right of action following trial on the merits, their suit against the Board of Commissioners of the St. Charles Parish Hospital Service District and the Police Jury of St. Charles Parish in which they sought to have declared null, void, and of no effect the notice calling a special property tax election;[2] the election held pursuant to the call on July 10, 1956; and to enjoin any and all action thereunder, including incurrence of indebtedness, issuance of bonds, obtaining of land for and

1. Although counsel representing the appellants claims there are over 200 petitioners, the trial judge in his written reasons for judgment states the plaintiffs are 136 in number.

2. The resolution calling the election, the public notice of that call, and the ballot used in the election placed before the people the following propositions: "Proposition No. 1—Shall St. Charles Parish Hospital Service District incur debt and issue bonds to the amount of One Hundred seventy-five thousand ($175,000.00) Dollars, to run twenty-five (25) years from date thereof, with interest at the maximum rate of four per centum (4%) per annum, for the purpose of acquiring buildings, machinery and equipment, including both real and personal property, to be used in providing hospital facilities to said District, the title to which shall be in the public? Proposition No. 2—Proposition to levy a .0015 mill tax on all the property subject to state taxation in St. Charles Parish Hospital Service District for the period of ten years for the purpose of maintaining and operating the District's hospital service facilities."

provision of any hospital facilities, as well as levying taxes.

The petition is rather lengthy, inartistically drawn, and confusing. It contains, also, many allegations that are mere conclusions of the pleaders predicated upon no factual specifications, and others that are totally irrelevant and immaterial to the relief sought. However, stripped of unnecessary verbosity, the allegations are, substantially, that the election held on July 10, 1956, is invalid for the following reasons:

(1) The board is illegally constituted.

(2) The election was called in violation of R.S. 39:501 which makes it mandatory that special elections for the incurrence of bonded indebtedness be called only on petition of one-fourth of the property taxpayers eligible to vote in a hospital district.

(3) The election was called for July 10, 1956, although a regular primary was scheduled for 21 days later.

(4) The call was defective in that it failed to inform the voters (a) a hospital was to be constructed with the proceeds of the bond issue; (b) the federal government was to participate in the plan to the extent of contributing $252,000 of the estimated cost of $427,000 and in the event it did not the $175,000 voted would be totally inadequate to supply the proposed facilities; (c) the government could not participate under prevailing statutes unless provision was made for the care of charity patients and no such provision was made; and (d) the proposal depended upon the donation of land for the site and such land had not been donated.

(5) There was no adequate survey to determine the need for such a hospital and there was a lack of planning.

(6) The election was called and conducted as the result of fraud, corruption, and collusion between the police jury, the board, and other persons.

(7) Notice of the election was not published in a newspaper at least four times once a week, as required by R.S. 39:503.

(8) A sufficient number of disqualified voters cast votes in the election to insure the propositions would not have passed but for their votes.

(9) Residents of the hospital district on the East bank of the Mississippi river will be charged more for services than those on the West bank.

(10) In the alternative, the board purposes to use matching government funds made available under the Hill-Burton act, which contravenes constitutional guarantees inasmuch as its socialistic intent is to place the medical profession and medical facilities under the control of the federal government, thus depriving petitioners of their right to select doctors and hospitals of their own choice, regardless whether the hospitals are operated on a segregated basis.

A perusal of the record and the applicable law will show there is no merit to any of these allegations.

The Police Jury of St. Charles Parish in creating the Board of Commissioners of the St. Charles Parish Hospital District followed meticulously the provisions of legislative enactments carrying into effect constitutional authorization for such hospital districts. Section 14(d–2[3]) of Article XIV of the Constitution as enacted in 1948, and R.S. 46:1051–1067.

■ The record further reveals that, pursuant to the authority of R.S. 46:1065 [3] the board, availing itself of the provisions set out in Part II of Chapter 4 of Title 39 of the Revised Statutes (R.S. 39:501–518) for submitting to the voters the question of incurring debt, issuing bonds, and levying taxes for hospital purposes, and, in strict conformity therewith, called the election for July 10, 1956, giving, as will be seen from Footnote No. 1 supra, full notice of the purpose of the election, and, further, specifically tracking statutory provisions requiring the inclusion of the amount of the proposed debt, rate of interest, etc., as required by R.S. 39:502,[4] more detailed information with respect to the machinery for conducting the election as provided in R.S. 39:503,[5] as well as other pertinent constitutional and statutory provisions. See, subparagraph (d–2[3]) of Section 14 of Article XIV of the Constitution of 1921, as enacted in 1948; R.S. 46:1065; and R.S. 39:511 and 559. And while R.S. 39:501 [6] makes it the mandatory duty of such gov-

3. This section provides: "Whenever an election shall be called by the governing body of the district for the purpose of submitting to the qualified electors of any hospital service district the question of incurring debt and·issuing bonds for the purpose of acquiring property to be used for hospital purposes, the governing body of the district may in the same election submit to the qualified electors of the district, in the manner provided by Part II of Chapter 4 of Title 39 of the Louisiana Revised Statutes, a proposition to levy a special tax not to exceed five mills on the dollar for a period not to exceed ten years for the purpose of constructing, maintaining and operating the district's hospital facilities."

4. The pertinent part of R.S. 39:502 reads: "The election shall be ordered by resolution which shall state the purpose for which it is called. * * * If the proposition is to levy a special tax under Part IV of this Chapter, the rate, object, and purpose for which the tax is to be levied, and the number of years it is to run must be stated."

5. R.S. 39:503 provides in part: "Notice of the election shall be given embracing substantially all matters required to be set forth in the resolution ordering the election, and shall set forth further that the authorities ordering the election will, in open session, at an hour and place named, proceed to open the ballot boxes, canvass the returns and declare the result."

6. The pertinent part of this section reads: "The governing authority of any subdivision *may* call a special election for any of these purposes *at any time;* and it *shall* call an election for any of these purposes when requested so to do by the petition in writing of one-fourth of the property taxpayers eligible to vote at the election." (Emphasis supplied.)

erning authority to call an election for these purposes when requested to do so by petition in writing of one-fourth of the property taxpayers eligible to vote at the election, that body is also vested with the discretion of calling a special election for any of these purposes at any time.

There is no provision in the law that forbids the holding of such a special election either immediately before or after a primary election, and we know of no good reason why it could not be held at such time. Indeed, it would seem that under the clear provisions of R.S. 39:503 (set out in Footnote No. 5 supra) the board had no alternative but to call the election at a different time than the primary, for this section requires that the authorities open the ballot boxes, canvass the returns, and declare the results of the election *in open session,* and information with respect to the hour and place when and where this will be done must be contained in the call and public notice.

Inasmuch as the election was called and held in strict conformity with requirements of the law, as above pointed out, the allegations contained in Paragraph No. 4(a), (b), (c), and (d),[7] and also in Para-graph No. 5 state no cause of action. The same may be said with respect to the allegations of Paragraph No. 9, for the matter of the prices to be charged East and West bank residents of the district not only has no relevancy to the validity of the election, but is a matter that lies solely within the discretion of the board in the formulation of its administrative policies if and when the hospital becomes a reality and may then be attacked if discriminatory.[8] And as for the allegations with respect to fraud and conspiracy, they state no cause of action inasmuch as they are very broad, without specification of facts on which they are predicated, and constitute, therefore, nothing more than the conclusions of the pleaders. Furthermore, not one scintilla of evidence was introduced to substantiate such charges.

The charge that if the illegal votes cast were considered the measure would have been defeated is not supported by the evidence. Plaintiffs failed to produce any evidence of specific instances where an unqualified voter cast his ballot in favor of either of the propositions submitted. They called only two witnesses on this phase of the case, and, conceding for argument that both were in fact ineligible under

7. Defendants averred in answer the land had actually been donated and proved at the trial that proper deed therefor had been executed.

8. In answer defendants labeled as untrue the allegation that the district as created encompasses land lying on the East bank of the river, and petitioners made no attempt to disprove this.

the provisions of R.S. 39:508,[9] neither stated whether he voted for or against the propositions. In any event, it is clear that even had they voted favorably and their votes were added to those cast against the measure, it would still have had no material bearing on the ultimate results of the election. See, Sylvestre v. St. Landry Parish School Board, 164 La. 204, 113 So. 818; Blanchard v. Iberville Parish School Board, 218 La. 784, 51 So.2d 70; and Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403, and the authorities therein cited.

The complaint with respect to the publication of notice of the call is apparently levelled at the legibility of the type as it appeared in the newspaper, and although plaintiffs called one witness to establish that portions of the notice were not readable, his testimony dealt with only two issues of the paper, and even in these instances the criticized portions were read by him. Furthermore, it was established that publication of the notice appeared in the parish newspaper on six succeeding weeks (the law requires only four), and that the length of time intervening between the first publication and the date of the election was more than the thirty days required by R.S. 39:503.[10]

The alternative attack on the constitutionality of the act authorizing federal assistance in the establishment of hospitals, 60 Stat. 1041, U.S.C.A., Title 42, Section 291(f), commonly referred to as the Hill-Burton Act, is obviously without relevancy to the object of this suit, for while the board is given discretion in securing either state or federal aid in carrying out the purposes for which the districts are created,[11] they are not required to do so. Of necessity, therefore, any decision as to the constitutionality of this act must await the

---

9. It appears that while one of these witnesses qualified as a voter and owned property in the district, one parcel was not assessed in his name although he was the owner at the time of the election. It would seem, therefore, that he was, under the jurisprudence, fully qualified to vote. See, McFatter v. Beauregard Parish School Board, 211 La. 443, 30 So.2d 197; Peck v. Board of Directors, 137 La. 334, 68 So. 629. The other witness was the only plaintiff called to the stand to substantiate the allegations of the petition in this respect.

10. The pertinent provisions are as follows: "The notice shall be published for thirty days in a newspaper published in the subdivision; or if there is no newspaper published therein, in a newspaper published in the parish * * *. Four publications in a newspaper once a week, shall constitute a publication for thirty days; provided thirty days intervene between the date of the first publication and the date of the election."

11. The provisions of R.S. 46:1066 are, in effect, that these hospital districts "shall have full power to do such things and enter into such contracts and agreements with the United States of America or with any state or federal agency or instrumentality as may be necessary to procure aids and grants to assist such districts in carrying out the purposes for which they are created."

decision of the board to avail itself of the discretion given it in this respect.

Counsel for petitioners in argument here complain bitterly about the judge's refusal to permit the ballot boxes to be opened in court for discovery of *any* irregularities he might find therein, whether covered by the allegations or not. This argument needs no further answer than to say that there was no showing whatsoever either in the petition or in the facts that were developed during the trial that would warrant such action by the judge.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of appellants.