SAVOY, Judge.
Plaintiff has appealed from an adverse judgment rendered against him in the district court.
The matter is before this Court for the second time. After appellant had perfected his appeal in this Court, appellee filed a motion to dismiss the appeal on the ground that this Court had no jurisdiction. We denied the motion to dismiss the appeal, holding that this was the proper tribunal to hear the appeal, citing Article 7, Section 29 of the Louisiana Constitution. Wright v. Lake Charles Harbor and Terminal District (La.App., 3 Cir.,1966), 186 So.2d 639.
Because of the nature of the case we granted the parties a special hearing which was heard by the entire Court.
Both counsel have argued the case orally and have supplied the Court with exhaustive briefs.
In his petition plaintiff states that he is a taxpayer and a registered voter residing within the territorial limits of Lake Charles Harbor and Terminal District (hereinafter referred to as the “District”) ; that the District is a political subdivision of this State; that on November 10, 1965, the Board of Commissioners of the District published in the official journal of the District a notice in the form of a resolution authorizing the issuance of $5,000,000 Port Improvement Revenue Bonds of the District, and providing for the method of paying said bonds; that on the same date the District published in its legal journal a notice in the form of a resolution providing for the issuance of $16,400,000 Refunding and Improvement Bonds, Series A & B of the District, said resolution provided the method of paying the principal and interest of said bonds and further provided for the escrow and investment of said funds, including a portion of the proceeds of said bonds for the purpose of paying certain outstanding obligations of said District.
Petitioner stated that he desires to contest the constitutionality and legality of the aforesaid issues, and asked the district court to issue a permanent injunction enjoining the district from proceeding with the issuance of said bonds.
Petitioner averred that the proposed issuances of the aforesaid bonds will increase the ad valorem taxes affecting the property within the limits of said District without the property holders within the District having an opportunity to vote on said increase in taxes; all in violation of the Constitution and statutes of this State.
Plaintiff alleged that the District proposes to construct a bulk handling facility, which is really a “coke plant” and further proposes to acquire land and to pay certain fiscal, legal and engineering fees from the proceeds of the $5,000,000 bond issue; that the use of the public funds for the construction of the coke plant will unduly deplete the public fisc, and it is intended to give advantage to a private industry at the taxpayers’ expense; said coke plant is being constructed chiefly for the advantage and benefit of Cities Service Oil Company; that the proposed coke plant has already been leased to private firms, and that the anticipated revenues of this facility will be the sum of $1,920,000 over a ten-year period, which is economically unsound.
Plaintiff alleges further'that with reference to the proposed bond issues mentioned hereinabove, the District proposes to secure *452 said bonds by pledge and dedication of the net revenues which the District will derive from the operation of its system, and also from the proceeds of the motor fuel tax funds dedicated to the District for a period of forty years, thus binding and restricting the successors to the present Board to the payment of said bonds; that the District has not dedicated or allocated any of the funds to be derived from the said bonds, except with reference to the $5,000,000 issue, and that petitioner fears that the District may waste said funds without any consequent public advantage; that the taxpayers in the District, in the years 1954 and 1961, approved certain bonds and provided for ad valorem taxes therefor on the basis that said bonds would be paid for from Port revenues and gasoline taxes and such ad valorem taxes as might be necessary, and that the diversion of the Port revenues and gasoline taxes from the support of said bonds to the revenue bonds without approval of the taxpayers constitutes a breach of faith with said taxpayers.
Plaintiff also alleges that the advertisement of the resolution proposing the $5,000,000 bond issue is illegal for the reason that the resolution states that any person in interest may contest the legality of the resolution and the validity of the bonds for a period of thirty days from the date of the adoption of the resolution, but that the Constitution and statutes of this State provide a period of thirty days from the date of the publication of the resolution within which the legality thereof can be raised; that both of said bond issues provide that all bonds shall bear interest from October 1, 1965, although the bonds will not be sold and revenue therefrom will not be derived under the proposed bond issue until December 15, 1965, thus providing for the expenditure of interest on said bond issues for a period of 75 days without any benefits being derived therefrom.
Petitioner alleged that on December 15, 1964, the District entered into a contract of lease with Societa Alluminio Veneto Per Azioni and Cities Service International, Inc., under which the District has leased to the said parties the coke plant, which lease was entered into without observing the requirements of LSA-R.S. 41 :- 1211-1221, which statutes require, among other things, advertisement and submission of bids before said property can be leased; that said lease constitutes a loan or grant of public property in violation of the provisions of Article 4, Section 12 of the Louisiana Constitution, and further violates the prohibition of the said Article, which prohibits a political subdivision from undertaking to carry on the business of a private corporation by furnishing lands for the use of the said corporation.
Defendant filed an answer and recon-ventional demand. In its answer, defendant denied all of the allegations contained in plaintiff’s petition and alleged various statutes, articles of the Constitution, and decisions of the courts of this State in support of its position. Assuming the position of plaintiff-in-reconvention, defendant asked for certain damages as a result of delays caused by plaintiff, defendant-in-reconvention, in delaying the sale of the bonds and other related matters. Defendant prayed that plaintiff’s main demand be dismissed, and that it recover on its reconventional demand. Counsel for defendant then filed a Motion for Summary Judgment.
After a trial on the Motion for Summary Judgment, the district judge granted said motion and dismissed plaintiff’s suit. This appeal followed.
In the recent case of Delta Equipment and Construction Company v. Royal Indemnity Company, (La.App., 1 Cir.,1966), 186 So.2d 454, the court stated:
“It is now the well settled law of this state that summary judgment will lie only when the pleadings, depositions, and admissions on file, together with *453 the affidavits, if any, show that there is no genuine issue or dispute as to a material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Article 966; Kay v. Carter, 243 La. 1095, 150 So.2d 27.”
After carefully reviewing the record in the instant case, we are of the opinion that there are no material issues of fact, and that the issues involved herein are solely matters of law.
The District was created in 1924 as a political subdivision of this State by virtue of the Constitution of Louisiana and Acts of our State Legislature. The District has constructed, developed, maintained and operated harbor and terminal facilities since its inception; and in connection with these facilities, it has, from time to time, issued bonds and other indebtedness for capital improvement of the Port facilities.
There are presently outstanding in the District public improvement bonds in the sum of $10,845,000; $4,385,000 of this sum are the bonds outstanding from an issue of the District dated July 1, 1954, pursuant to an election in May of that year; $6,-460,000 represents the amount outstanding of bonds entitled “Series A of 1961” which were also issued pursuant to an election of 1961. The total amount of the 1961 bond issue was $13,000,000; $7,000,000 of said bonds were sold, and $6,000,000 have not yet been issued. Of the $7,000,000 bonds sold and issued, $6,460,000 are outstanding at this time.
On November 3, 1965, the Commission, through its Board, adopted two resolutions; one authorizing $16,400,000 of refunding and improvement bonds — $10,400,-000 being designated as Series A and designed to refund and take the place of the $10,845,000 outstanding; and to issue $6,-000,000 of Series B bonds for the purpose of paying certain cost of acquiring land, dredging and construction for the District. The other resolution authorized the issue of $5,000,000 Port improvement revenue bonds to be secured by Port revenues and Y20 motor fuel tax dedicated to the Port from the gasoline tax collected by the State, under the provisions of Article 6-A, Section 5 of the Louisiana Constitution of 1921.
Counsel for plaintiff complains that the issuance of the improvement bonds is illegal for two reasons: (1) that no election has been called for this purpose; and (2) that because of the diversion of the Port revenues and the motor fuel tax from the general obligation bonds to the revenue bonds, the taxpayers may have to pay additional ad valorem tax to meet the principal and interest on the general obligation bonds which are secured by an ad valorem tax and by the Port revenues and the motor fuel tax. The first contention is without merit. LSA-R.S. 34:214 authorizes the District to issue refunding bonds without the holding of an election. As to the second contention made by counsel for plaintiff, he states in his petition (Article 13) that when the outstanding public improvement bonds were approved by the voters of the District in 1954 and 1961, the proposition voted on stated that said bonds would be paid from the Port revenues and gasoline tax and such ad valorem taxes as might be necessary. As we interpret the language used in the propositions of 1954 and 1961, the bonds voted on were a general obligation of the District, and the proposition stated further that the bonds may additionally be secured by the net operations of the District and by the funds received by the District from the State from the motor fuel tax by virtue of the constitutional provision mentioned herein. Counsel for plaintiff also contends that the diversion of the port revenues and gasoline tax might increase the ad valorem tax to plaintiff and other taxpayers in the future. While there is no showing that because of the refunding operation an increase in ad valorem taxes, will be necessary, it is well settled that when ad valorem bonds are sold, the governing authority of said political subdivision may in *454 crease or decrease annually the millage necessary to pay the bonds as they mature in principal and interest. See Article 14, Section 14(j) of the Constitution of Louisiana of 1921; LSA-R.S. 39:569. See also Opinions of the Attorney General of Louisiana (1926-1928), page 38.
The $5,000,000 Port revenue bonds may be issued without the holding of an election. This is provided for by Article 14, Section 31 of the Constitution of Louisiana, and this procedure has been approved by the Supreme Court of this State in the case of Shannon v. Morgan City Harbor & Terminal District, 234 La. 1035, 102 So.2d 446.
Counsel for plaintiff also argues that the bond issues provide that the bonds bear interest from October 1, 1965, although the bonds will not be sold and the proceeds therefrom will not be available until December 15, 1965, thus providing for interest for 75 days without the District deriving any benefit therefrom for 75 days. All of the bonds involved in this litigation must be sold for not less than par and accrued interest. This is provided for by Article 14, Section 31 of the Constitution of Louisiana of 1921, as well as by the resolutions authorizing the refunding and improvement bonds and the Port revenue bonds.
The contention that the $5,000,000 revenue bond issue is illegal because the resolution states that anyone wishing to attack its legality must do so within thirty days from its adoption, whereas the Constitution of this State provides that the legality of a resolution may be questioned thirty days from its publication, is without merit. Plaintiff has not suffered because of this omission. His suit was timely filed and no objection was made to its filing by defendant.
Counsel for plaintiff next complains that the revenue bonds were issued for an illegal purpose, and questions the wisdom of their issuance. He also complains that the lease between the Commission and the parties named herein is not valid because it was not advertised and bids received; that it is unlawful for the Board to contract for the services of a financial advisor or financial consultant who shall also have the authority to bid on a competitive sale of the bonds. Lastly, plaintiff argues that the permission of the State Bond and Tax Board was not granted prior to the issuance of said bonds.
The trial judge has answered each contention advanced by counsel for plaintiff, and we adopt his reasons as our own in connection with these subjects, to-wit:
“The next question for decision is whether the bonds were being issued for an unlawful or improper purpose or will result in the undue depletion of the public fisc. A resolution authorizing the issuance of these bonds states that the purpose of the bonds is as follows: ‘paying part of the cost of acquiring a structure or structures useful for the commerce of the port area of the district to consist of a bulk handling facility, including land, road and rail rights of way and all appurtenant facilities and equipment, and paying all fiscal, legal, engineering and other incidental costs in connection with such purpose and in connection with the issuance’ of the bonds.
“The affidavit of the president and secretary of the District sets out the nature of the facility to be constructed. This facility is expected to be constructed for the purpose of handling coke and other bulk cargoes in connection with the other harbor and terminal business district. The plaintiff does not allege that the facility, when constructed, would be unsuitable for cargo handling. The plaintiff contends that the construction of the plant is chiefly for the advantage and benefit of Cities Service Oil Company. The affidavit of the president and secretary of the District reflects that, while the only contract presently existing concerning the bulk handling facility is the one on file herein, it is the plan to *455 construct the hulk handling facility which shall be capable of handling numerous other products in a bulk state. The contract reflects that the District proposes to handle other products for future users and so makes provisions for these eventualities. Even if the agreement would be deemed an exclusive lease, Article 14, Section 31 and LSA-R.S. 34:203 permits such a lease agreement. Those provisions authorize the District to ‘lease or sub-lease for processing, manufacturing, commercial and business purposes, lands or buildings owned, acquired or leased by lessee by it.’ The issuance of revenue bonds ‘for any purpose within the authority delegated them’ is specifically authorized by Article 14 Section 31 of the Louisiana Constitution. Under this constitutional provision, the District is authorized to pledge for the payment of the principal of and interest on such negotiable bonds, the income and revenue derived or to be derived from the properties and facilities maintained and operated by them or received by the Districts from other sources. The issuance of these bonds is fully authorized and also the purpose for which the money is to be used is constitutional. Miller v. Police Jury, Washington Parish, 226 La. 8, 74 So.2d 394; and also, Miller v. Greater Baton Rouge Port Commission, 225 La. 1095, 74 So.2d 387.
“The plaintiff questions the wisdom of the installation of the bulk plant. 62 C.J.S. 377, Municipal Corporations, Section 201, provides as follows:
“ ‘As a general rule, the courts may not and will not, inquire into the wisdom, policy, necessity, expediency, or propriety of a municipal act or ordinance.’
“In the case of Boyle v. New Orleans Public Service, Inc., 163 So.2d 145, 4th Circuit Court of Appeals, held as follows:
“ ‘It is not the province of the courts to decide whether an ordinance is wise or unwise. That decision addresses .itself solely to the legislative body. A court of equity cannot substitute its judgment for that of the City Counsel unless it is shown that the Council acted arbitrarily or capriciously.’
“This court concludes that the necessity and/or wisdom of the installation of the bulk facility rests in the sound discretion of the District through its Board of Commissioners unless such discretion was labeled arbitrary or capricious. There is no allegation that this action is either arbitrary or capricious.
't' ^ ^
“The plaintiff further contends that it is unlawful for the District to contract for the services of the fiscal advisor or financial consultant who shall also have the authority to bid on a competitive sale of the bonds. This court finds no prohibition against such procedure but on the contrary has been cited the case of Leedy, Wheeler & Alleman, Inc., v. Okaloosa County, 77 So.2d 788, which is a Florida case dealing with this particular question and the Supreme Court in Florida upheld the practice of employing a fiscal advisory firm and at the same time allowed the fiscal advisor firm to submit a bid along with other bidders for the purchase of the bonds.
“The plaintiff’s petition alleges that the agreement entered into by the District with SAVA and Cities is a lease and is subject to the provisions of LSA-R.S. 41 :- 1211 et seq. A reading of that agreement reflects that it is not a lease but merely is a working agreement wherein certain facilities were to be used for the handling of coke produced by SAVA and Cities, which coke was to be loaded upon rail or other shipping facilities. The Agreement reflects that the entire facility will be completely owned and operated by the District through its employees. This type of facility and the agreement entered into is clearly authorized by Article 14, Section 31 of the Louisiana Constitution of 1921.”
We are of the opinion that if the agreement between the Commission and Cities Service, et al. is a lease rather than *456 a contract, the Commission is under no obligation to advertise for bids. Kliebert v. South Louisiana Port Commission, (La.App., 4 Cir., 1966), 182 So.2d 814, (writ refused.)
In the Kliebert case, supra, plaintiff sought to set aside a lease agreement between the Port Commission and Bayside Warehouse Company whereby Bayside was to sell certain riverfront land to defendant, and the Commission was to build a grain elevator on the property and lease it in turn to Bayside for a period, with renewals, of forty years. Plaintiff contended that the agreement was void in that it violated LSA-R.S. 41:1211 et seq., the competitive bidding statute, and the lease was for a term of forty years rather than ten years as provided for by the above statute. The Court of Appeal, in affirming the judgment of the district court dismissing plaintiff’s suit, said:
“ * * * But the Constitutional grant of authority to the Commission is greater than the scope of the statute. The Commission is expressly authorized to lease for periods up to 40 years. In addition, the Commission is empowered to construct and acquire structures useful for commerce in its area. It would be an unwarranted restriction on the operation of the Commission to require it to submit an intricate agreement of the type proposed here to the rigors of the competitive bidding statute. It must be concluded that the power granted to the Commission necessarily carried with it the implied authority to -negotiate contracts consistent with its purpose. To hold otherwise would subvert the Constitutional mandate by applying inferior statutory law. See Hotard v. City of New Orleans, 213 La. 843, 35 So.2d 752 (1948).”
Article 14, Section 31 of the Louisiana Constitution of 1921 grants to the Commission, among other rights, the authority:
“ * * * to lease or sub-lease for processing, manufacturing, commercial and business purposes, lands or buildings owned, acquired or leased as lessee by it, which leases may run for any term not exceeding forty years at a fixed rental, but may run for a term not exceeding ninety-nine years provided they shall contain a clause or clauses for readjustment of the rentals upon the expiration of a primary term of forty years, * *
We are of the opinion that the Commission may legally enter into a lease contract without complying with LSA-R.S. 41:1211 et seq.
Further quoting the opinion of the trial judge with reference to plaintiff’s last contention mentioned hereinabove:
“Article 14 Section 31 of the Louisiana Constitution provides that the approval of the State Bond and Tax Board must be obtained for the issuance of such bonds. LSA-R.S. 39:871 provides that political subdivisions may incur indebtedness or issue bonds with the consent of the State Bond and Tax Board. The language has been interpreted in an analogous case of Palmer v. Mayor & Board of Aldermen, 195 La. 997, 197 So. 697, which held that the only requirement is that before issuing and selling the paving bonds, the consent of the State Bond and Tax Board must be obtained. For further interpretation of this requirement I cite also the case of Ozenne v. Board of Commissioners of St. Landry and St. Martin [Gravity] Drainage District No. 1, 183 La. 465, 164 So. 247, and State, ex rel Maestri, Mayor v. Cave, Commissioner of Public Finance, 193 La. 419, 190 So. 631. The approval of the State Bond and Tax Board must be obtained by the District prior to the actual sale of the bonds, but such approval is not necessary before effectuating the preliminary steps. * * *»
For the reasons assigned the judgment of the trial court is affirmed. Costs of this appeal are to be paid by appellant.
Affirmed.