Dear Mr. Whitehead:
You requested the opinion of this office concerning Recreation District No. 3 of Livingston Parish, a political subdivision. You advised that on November 16, 1991, the district obtained the approval of the voters to issue general obligation bonds in the amount of $3,000,000 for the "purpose of purchasing, acquiring and constructing buildings, equipment and other facilities, and for the construction and maintenance thereof, title to all of which shall be in the e public, including but not limited to (1) constructing a multi-purpose recreation center complex at North Park, (2) purchasing, constructing and acquiring improvements to and equipment for existing facilities located at North Park, South Park and West Livingston School grounds, and (3) maintaining various district facilities including but not limited to the multi-purpose recreation center complex at North Park?"
The question presented is whether, under the above quoted proposition, 30 mills could be levied, of which 15 mills are to retire bonds and 15 mills are for maintenance of the district facilities?
Art. VI, Sec. 33 of the La. Constitution authorizes the issuance of general obligation bonds after approval of the electors. The full faith and credit of a political subdivision is pledged to the payment of general obligation bonds and the political subdivision "shall levy and collect or cause to be levied and collected on all taxable property in the political subdivision ad valorem taxes sufficient to pay principal and interest and redemption premiums, if any, on such bonds as they mature."
The statutory provisions relating to the issuance of general obligation debt are found in LSA R.S. 39:551, et seq, Section 569(A) providing in pertinent part as follows:
 The governing authority of any subdivision issuing bonds hereunder shall impose and collect annually, in excess of all other taxes, a tax on all property subject to taxation by the subdivision sufficient in amount to pay the interest annually or semiannually and the principal falling due each year, or such amount as may be required, for any sinking fund necessary to retire said bonds at maturity. . . (Emphasis supplied)
The jurisprudence of this state concerning this issue compliments the above quoted provisions, it being stated in Wright v.Lake Charles Harbor and Terminal District,188 So.2d 449 (La.App. 3rd Cir. 1966), writs refused 249 La. 620,188 So.2d 722, the following:
 ". . . it is well settled that when ad valorem bonds are sold, the governing authority of said political subdivision may increase or decrease annually the millage necessary to pay the bonds as they mature in principal and interest. See Article 14, Section 14(j) of the Constitution of Louisiana; LSA R.S. 39:569. See also Opinions of the Attorney General of Louisiana (1926-1928), page 38."
This office has also determined that the Louisiana Constitution authorizes a political subdivision to levy and collect ad valorem taxes for the retirement of general obligation bondsonly to the extent necessary to pay the debt service on said bonds, and, therefore, any millage which provides a political subdivision with revenues in excess of the amount needed to meet the debt service requirements on its general obligation bonds should be rolled back to that extent. Op.Atty.Gen. 77- 1193.
For the foregoing reasons, it is the opinion of this office that the Recreation District can only levy a millage in an amount to meet the debt service requirements on any outstanding general obligation bonds issued pursuant to the November 16, 1991 proposition, and cannot levy an additional millage under that proposition for maintenance.
Trusting this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________ MARTHA S. HESS Assistant Attorney General
cc: Charles Borde
DATE RECEIVED: NOV. 17, 1995
DATE RELEASED:
MARTHA S. HESS, ASSISTANT ATTORNEY GENERAL